Robert Joyner WHITE, Leroy Freeman Duncan, Frederick Freeman Leister and Leon Jackson, Plaintiffs,

v.

Olin G. BLACKWELL, Warden, United States Penitentiary, Atlanta, Georgia, Defendant.

Civ. A. No. 10184.

United States District Court
N. D. Georgia,
Atlanta Division.

Nov. 20, 1967.

Robert Joyner White, pro se.

Bruce R. Jacob, Atlanta, Ga., for Leroy Freeman Duncan, Frederick Freeman Leister and Leon Jackson.

Charles L. Goodson, U. S. Atty., and F. D. Hand, Jr. and Theodore E. Smith, Asst. U. S. Attys., Atlanta, Ga., for respondent.

## STATEMENT OF THE CASE.

HOOPER, District Judge.

This action originated by a Complaint filed June 1, 1966 by plaintiffs White, Duncan and Jackson. An additional plaintiff withdrew and a new plaintiff added by intervention, viz., plaintiff Leister.

Substantially this action is brought by Duncan, Jackson and Leister, inmates of the Penitentiary in Atlanta, who contend that their convictions were illegal, and they seek the right to invoke the assistance of inmate White who, during his incarceration, has made a comprehensive study of the law involving post-conviction procedures. Plaintiff White is also claiming the right to represent and assist the other three plaintiffs. If his rights are based on the right of a person to practice law, he is without redress as he is not a licensed attorney. If, however, the other three plaintiffs are held to have the right to use his assistance, then he would have obtained all that he seeks in this case.

A brief summary of the Complaint is the following:

Defendant Blackwell, the Warden, is empowered by the United States Bureau of Prisons to administer the affairs of the Penitentiary and to issue general orders and rules. That allegation is shown by the evidence in the case, provided however, that the rules promulgated by the Warden must follow guidelines adopted by the Bureau of Prisons, as hereinafter set forth.

That the Warden issued general orders

" * * * resulting in the effectuation and promulgation, through subordinates and agents, of the following rules, customs and usages:"

These rules are contained in Paragraph 4 of the Complaint, in substance, and consist of the following:

"(a) All inmates must prepare their own legal documents and otherwise do their own legal work;

(b) No inmate is to assist another in the preparation of any legal documents;

(c) No inmate is to receive assistance from another in the preparation of any legal document;

(d) Legal documents of any type or description found in the possession of an inmate, and which do not pertain to him or to his own case, will be confiscated and destroyed;

(e) Failure to adhere to the foregoing may result in disciplinary action, namely, solitary confinement and/or withholding or forfeiture of statutory or extra earned good time."

As hereinafter more fully set forth, there seems to be no dispute that the foregoing constitutes a proper summary of the rules, nor is it disputed that disciplinary action has frequently been taken as to Paragraph (d), set forth above. There is also much evidence, however, that on many occasions the prison officials have not only permitted, but have suggested that inmates obtain and use legal services of plaintiff White, and one or more other inmates having made independent studies of law while in the institution.

Disciplinary action taken by prison authorities for violation of the above rules is enumerated in Paragraph 5, but apparently in practically all such instances, the violation involved only item (d), where an inmate had in his cell legal documents belonging to another inmate.

These sanctions consisted of solitary confinement, forfeiture of extra earned good time, either or both. It is important to note, however, that in addition thereto rules were enforced

> " * * * by confiscating and destroying legal documents found in the possession of inmates which did not pertain to them or to their own cases."

These documents were destroyed, and there is no evidence that prior to their destruction the inmate having possession of the same, or the inmate whose rights were involved in the papers, were given any notice or opportunity to be heard in connection therewith, or to show that the papers in question were not in fact prepared in a manner not violative of the rule which provides,

> "No inmate is to assist another in the preparation of any legal document."

The Complaint alleges that defendant will continue to fully enforce said rules, and that allegation is not denied. This Court must assume, however, that the enforcement of the rules in the future will follow the pattern of enforcement as in the past, to which reference will hereinafter be made; such pattern allows to prisoners much greater latitude in assisting each other than the strict letter of the rules would indicate.

It is alleged (Paragraph 7) that the intended purpose of such rules is to hinder the other plaintiffs from exercising their constitutional rights to have the assistance of White

> " * * * to thereby enable them to have free access to the courts,"

and pursue their judicial remedies, and the enforcement of the rules is depriving plaintiffs of such rights. The defendant on the other hand, contends that no such illegal purpose exists, but on the other hand, the purpose of the rule is to maintain prison discipline; that to permit inmates having some knowledge of the law to assist other inmates causes the former to

> "build up a power structure,"

and furthermore, causes, or intends to cause, many disputes, quarrels and fights, growing out of differences between the inmate and his lay lawyer. There is no direct evidence as to the alleged

> "power structure"

but reference thereto will be hereinafter made. There is no evidence whatsoever of any instance wherein disputes between an inmate and his lay lawyer have caused quarrels or violence; many causes of such violence, however, are given in the evidence, and there are many others wherein real cause can not be determined. It might be said therefore, in a general way, that all transactions between human beings lay the background for possible differences and disputes, and that includes transactions between an inmate who has retained without compensation, or employed for compensation (express or implied) another inmate who is not a lawyer to perform legal services. Plaintiffs Duncan and Jackson set forth the offenses for which they are serving, and in a general way their attacks thereon, and plaintiff Leister by intervention does the same. They allege they desired to attack their sentences, but (see Paragraph 11) they are unable to do so because:

> "(a) They do not have a sufficient knowledge of the law, do not know how to prepare their own pleadings, nor how to proceed through the courts;
>
> (b) They do not have sufficient money to obtain the services of any lawyer to initiate such proceedings; and
>
> (c) Federal law does not provide for the appointment of counsel to research, prepare pleadings and otherwise initiate a direct or collateral attack upon a conviction or sentence on behalf of an indigent prisoner."

There seems to be no dispute as to any of the above stated reasons why said plaintiffs, and many other inmates of all prisons, are unable to seek legal redress by post-conviction procedures. Often a fellow-inmate, though a layman, has superior knowledge of the law involved, and in many cases shown by the evidence, has been instrumental in assisting an inmate to prepare and file a paper or mo-

tion which has ultimately resulted in the complete exoneration or the shortening of the sentence of the inmate benefitted.[1]

The prayers of the Complaint seek a declaration by the Court

" * * * that the aforesaid rules, customs and usages are violative of plaintiffs' vested, constitutional rights,"

that three of the inmates are rightfully entitled as a matter of law,

"to receive assistance from plaintiff White to the extent of having him prepare appropriate legal documents for submission to the courts on their behalfs, and otherwise receive his assistance in initiating"

an attack on their convictions; that plaintiff White is entitled to perform such services; that he is entitled to have such papers in his possession.

Findings of Fact from the evidence are more fully hereinafter set forth.

### FINDINGS OF FACT.

By way of elaboration of the ultimate findings of fact contained above, this Court finds:

(1) As to the policy of the Bureau of Prisons and the Atlanta Penitentiary:

(a) Rules of the Penitentiary provided:

"No inmate is permitted to assist another in the preparation of any legal document." See PX–19, Article 13(3).

Despite this rule, it appears that plaintiff White, an assistant librarian, having particular charge of the law books in the library and being familiar with their contents, would frequently confer and advise with other prisoners. This was done in an open manner and under the eyes of the prison librarian. At these conferences White and the other prisoner would have on the table before them the papers pertaining to the case of the latter, and also the law books from the library pertaining thereto.

Furthermore, there are numerous instances in which officials of the Penitentiary, including caseworkers (also referred to as parole officers) would refer to plaintiff White and to another inmate by the name of Rayborn (a teacher in constitutional law at the institution, but not a licensed attorney) for legal assistance and advice.

It also appears that both White and Rayborn assisted other prisoners in preparing and filing in court petitions for relief, resulting in release of the prisoner in question, or shortening of his sentence. Details as to these cases may be added hereto by amendment if written out and presented by plaintiffs' counsel. Some of these cases appear in the printed reports.

Counsel for respondent on the trial of this case do not contend that the penitentiary authorities desire or seek to prevent the prisoners from conferring with each other, and in connection therewith giving their experiences and interpretations involving various laws and decisions. It is inevitable that some of the prisoners have had experiences in court in which others are interested, and from which they may derive benefit.

(b) Rules of the Atlanta Penitentiary provide (see Rules Revised as of November, 1962—PX–19, Article 13(2)) that

---

1. It is public knowledge that federal district judges presiding over districts containing federal penal institutions, are now being deluged with applications for relief from inmates, many of the same being illegible, many of them not understandable, and only where there is a sufficient statement to enable the trial judge to know that there may be merit, is the trial judge authorized to issue a rule nisi and hear evidence. The matter of legal assistance to these inmates is critical. It also appears that these so-called "jail-house lawyers" have advised many prisoners that they have no meritorious claim for relief, causing them to discontinue their efforts, and probably to continue their service in prison with more resignation. On the other hand, it is common knowledge that other inmates, with an overvaluation of their own legal skill, induce fellow prisoners to use their services to bring legal petitions and motions in which there is no merit, thereby clogging the files of the courts with litigation to the detriment of the public.

"Legal documents found in the possession of an inmate and which are not his case will be confiscated."

However, it is provided that his court papers and correspondence with attorneys may be kept in his own possession, but stored neatly in his assigned locker. (PX–15(c)). It appears without dispute (by witnesses on the stand and by many affidavits admitted in evidence) that a large number of prisoners have been punished, by solitary confinement, or by loss of earned good time, or by confiscation of their papers, for violation of this rule. There is no denial by respondent as to the existence of the rule, its past enforcement, and the intent to enforce the same in the future.

The circumstances under which the documents got into the possession of the inmate concerned, whether the owner of the papers was heard on the matter, and many other factors, are not covered by the testimony in this case. Whether confiscation of these papers prevented the prisoner in question from filing his petition to the courts for relief does not appear, but it would seem likely.

(c) The rules provide, however:

"Inmates may prepare their legal papers either in their housing unit or in the library, and must do their own work." (PX–16, Par. 3(e)).

It is provided that:

"An inmate may work on his own case during leisure time." (PX–18, Article 13(4)).

It is also provided:

"If an inmate is unable to prepare his legal document, he may consult his parole officer for copies of the necessary forms and other information." (PX–18, Article 13(6)).

He may submit his legal papers to his caseworker (parole officer) to be typed, and if he has less than $20.00 in his commissary account the officer will

" * * * arrange for typing by inmate clerical staff when available in the library."

If his account exceeds $20.00 he may submit papers to his caseworker for mailing to a public stenographer (PX–18, Article 13(5)). It was provided the institution should provide the inmate a

" * * * tablet paper for longhand use." (PX–18, Article 13(5)).

However, typewriters and carbon paper are strictly prohibited. (PX–18, Article 13(5)).

It appears that each parole officer (caseworker) in the Penitentiary was assigned a large number of prisoners whom he was delegated to supervise, but a caseworker was not supposed to give legal advice to such prisoners. It was provided:

"If an inmate is unable to prepare his legal document, he may consult his parole officer for advice, but the parole officer is not a legal counsel."

(d) Prisoners are provided with library facilities and a librarian to supervise their activities. Casework supervisor, or chief of classification and parole, gave guidance to the librarian. (PX–16, Par. 3(a)). Plaintiff White was assistant librarian and, in the opinion of the librarian, was qualified to assist many prisoners with their legal problems. At the least, however, he was familiar with the law books and their contents, and was able to point out to the prisoners the pertinent statutes and decisions of which he had knowledge, and which would assist the other prisoners. At no time was any objection made to such activities upon the part of White, and the evidence is without dispute that it is frequently the function of a librarian to locate for customers the books and periodicals which will answer the questions they desire to research.

It is therefore difficult to draw a line of distinction between White as librarian, and White who is charged with being a "jailhouse lawyer." It seems clear, however, that he was made assistant librarian and put in charge of the law books for the reason that he had a superior knowledge as to the contents of the law books.

(2) With further reference to the practice by officials of the Penitentiary,

of destroying legal documents of one prisoner found in possession of another, it appears from Plaintiffs' Exhibit 19, Article 8, that all contraband may be confiscated and that term is defined as

" * * * any item that is not issued to you by the institution, or which you have not purchased from the commissary, items which may be given you by other inmates, or items which you may receive by trade or barter."

It appears, however, that prisoners are not restricted in their efforts to communicate with any court, and mail to any court legal papers, motions, or letters of any character. Whenever any official of the Penitentiary verifies a petition or motion, it should then be seen that it is mailed to the court for which it is intended. The paper, however, prior to verification and mailing should be kept by the prisoner in his own cell and his own locker.

## CONCLUSIONS OF LAW.

■ (1) This Court has jurisdiction on the claims by the three plaintiffs (all of them except plaintiff White) who are contending that their rights to access to the courts are violated by the rules promulgated by respondent. Such rights as hereinafter pointed out, are constitutional rights (due process), therefore this Court has jurisdiction. Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034.

■ Jurisdiction of this Court over the complaint filed by petitioner White seeking to establish his right to aid and assist the other petitioners may be subject to doubt, but apparently still exists. He has no legal right while in prison to practice law, nor does he have any law degree or license to enable him to do so on the outside. Seigel, et al. v. Ragen, 180 F.2d 785 (7 Cir.). Furthermore, if the other plaintiffs prevail the right of White to assist them will be established just as fully as if he were a plaintiff. However, if the other plaintiffs are entitled to recover (that is to use White's services) and if White should be punished for assisting them there would be an adverse affect on the rights of other prisoners who might desire the services of another inmate, even though they might under rules of the penitentiary be otherwise entitled to the same. See Johnson v. Avery, D.C., 252 F.Supp. 783, 785, reversed on other grounds.

■ (2) Prisoners are entitled to access to the courts in matters involving their confinement and are entitled to review by a district court of their claims that they are deprived of reasonable access to federal courts. Edwards v. Duncan, Commissioner, 355 F.2d 993 (4 Cir.). When the efforts of a prisoner to obtain an available appellate review of his conviction are frustrated by unreasonable prison rules the prisoner's constitutional rights are violated, DeWitt v. Pail, Superintendent, 9 Cir., 366 F.2d 682(8), regardless of whether the petitioner is in a state or a federal prison, even though

" * * * the repeated and persistent efforts of certain inmates to have courts consider the validity of their detention in prison is annoying to prison officials and, in most cases, is entirely unwarranted. * * * Prison officials cannot properly deny access to the courts by prisoners in their charge." Haines v. Castle, 226 F.2d 591 (7 Cir.).

(3)

"The mandatory requirement of the Sixth Amendment regarding right to counsel does not apply to indigent movants under 28 U.S.C. § 2255. This is a general review, it seems soundly based on the underlying purposes of the Amendment." Dillon v. United States of America, 307 F.2d 445 (9 Cir.) [2]

2. Section 2255 covers the same remedy as habeas corpus. It is filed in the court where a person was sentenced and, in the opinion of many, counsel should be furnished by the Government in such cases in the same way that counsel is now furnished for the defendant on his appeal. Reasons to the contrary are referred to in the above stated case in footnotes 2 & 3 at p. 446. Trial judges are constantly handicapped by their inability to appoint and compensate counsel for

The Court further stated:

"Appointment of counsel for an accused may sometimes be mandatory even in those areas in which the Sixth Amendment does not apply, such as when circumstances of an accused or difficulties involved in presenting a particular matter are such that a fair and meaningful hearing cannot be had without aid of counsel, and in such cases, compliance with the due process clause of the Fifth Amendment requires appointment of counsel."

While pointing out that it lies within the discretion of the trial judge as to whether counsel should be appointed the court ruled in the case cited:

" * * * that a proper exercise of discretion by the District Court required that appellant's request for counsel be granted."

There was a strong dissent in that case.

In Hatfield v. Bailleaux, 290 F.2d 632 (9 Cir.) the court said:

"In so far as federal habeas corpus proceedings are concerned indigent state prisoners are not entitled to court appointed counsel unless under the circumstances of the particular case this is required in order to attain due process of law."

The court further stated:

"In the context of this case, access to the courts means the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty, or to assert and sustain a defense therein, and to send and receive communications to and from judges, courts and lawyers concerning such matters. Whether or not in a particular case the access af-

forded is reasonable depends upon all of the surrounding circumstances." [3]

It should be kept in mind that we are here dealing only with complaints to the effect that an indigent prisoner is prevented by prison rules of availing himself of assistance from other prisoners who, while not licensed to practice law, are much better equipped than he to prepare a habeas corpus (or other) petition to a federal court.

■■ Confinement in a penitentiary deprives a person of many rights and liberties, including opportunities which a free man might enjoy. If he believes that he has good grounds he has the right to file a proper action in court for his release, such as habeas corpus, motion to vacate sentence, coram nobis, or declaratory judgment. Just as an injured person who cannot obtain a physician is glad to have the help of any nearby layman knowing principles of first aid, so does an indigent prisoner seize upon the help of another inmate who has a superior knowledge of law and criminal procedures. To let down the bars, however, and allow any prisoner, no matter how slight his qualifications to give legal advice to other prisoners, to suggest, promote and instigate proceedings and act as an attorney, would be more a detriment than a benefit to the prisoners, and enforce tremendous burdens upon the courts and expense to the public. These are matters of which this Court will take cognizance.

■ It is now therefore well established that wardens of our federal penitentiaries acting under authority of the Bureau of Prisons and the Attorney General may regulate this matter, and it only leaves for determination the matter of legality of the rules herein complained of.[4]

representing such plaintiffs where they apparently have a good cause of action, but have no counsel nor any means of obtaining the same.

3. In that case the plaintiff was held to be without remedy, the rules being held reasonable.

4. The defendant warden has promulgated many rules and practices for the benefit of the prisoners. There is a well-equipped library concerning criminal law, a librarian to assist the prisoners, pro-

## RULINGS ON OBJECTIONS TO THE RULES.

■ On page two hereof there is a summary of the rules complained of by plaintiff identified by letters (a) to (c) inclusive which will here be considered seriatim.

(a) The rules of the Penitentiary contain the following:

"Inmates may prepare their legal papers either in their housing units or in the library, and must do their own work." See PX–A, p. 2.

The rules also provide:

(c) "No inmate is to receive assistance from another in the preparation of any legal document."

These rules if literally interpreted and enforced would not be legal. Under the undisputed evidence these rules are not so enforced. As pointed out (see Finding of Fact #1) plaintiff White has been appointed assistant librarian, as a layman he has an unusual grasp and knowledge of the law concerning post-conviction procedures, prisoners who apply to their parole officers for assistance are frequently referred to White, and the latter in the presence of the librarian confers with such prisoners in the library with books and papers spread out before them. The rule therefore not being enforced as to a number of prisoners, cannot be enforced as to others.

■ Assuming, however, that such rules in the future are enforced, or attempted to be enforced, literally as against all prisoners, exceptions should be made. It is within the power and duty of this Court only to pass upon the legality of rules, and that power should be exercised with caution. Making of prison rules by the Bureau of Prisons and the warden under its jurisdiction is an executive and not a judicial function.

This Court, however, is of the opinion from the decided cases that the rules just quoted would be valid if the prohibition against the receiving of assistance from others was merely regulated and not in all instances prohibited. For instance, the evidence shows that any prisoner, believing that he has good cause for post-conviction relief, should report same and does report the same to his caseworker, and that seems to be a proper procedure. The caseworkers frequently refer such prisoners to plaintiff White, the assistant librarian, and he gives them help, and that too seems to be a proper procedure. Some of them have been referred to inmate Rayborn, whose talents have been recognized by the warden by his assigning him as a teacher of constitutional law at the institution. There may be other inmates who are qualified to assist such a prisoner, and who are also capable of advising them objectively, of encouraging their appeal to the courts when authorized, and discouraging the same when no good cause of action exists.

This Court takes cognizance of the fact that in many jurisdictions voluntary organizations are supplying prisoners with legal talent, such as law schools, bar associations, and legal aid societies, who are rendering to such prisoners legal assistance, and in such cases the assistance of fellow inmates (not licensed attorneys) may not be necessary. Therefore, the caseworker (acting under direction of the warden, or the warden himself) could assist the prisoner to employ counsel (if able to pay them) or, if an indigent, to obtain assistance from such organizations.

If a prisoner requests assistance from a fellow inmate and his request is denied and no other satisfactory assistance is afforded him, he always has the right to communicate with the district judge or with the Bureau of Prisons, or both.

vision for having petitions to the courts typed, for employment of counsel for prisoners able to pay them, for a room for the preparation of the writs (if not provided in their cells), for writing materials and paper. Counsel for three inmates filed a comprehensive brief concerning plaintiffs' First Amendment rights as to which there is no restriction, being limited only by prohibitions against unauthorized practice of law.

The above procedure is substantially that as now carried out at the Atlanta Penitentiary, at least to the extent that the prisoner reports his situation to his caseworker and the latter assists the prisoner in obtaining legal aid.

In view of many recent decisions giving prisoners certain rights heretofore denied them, our district courts are now receiving many petitions and letters prepared by lay prisoners, and district judges have difficulty in deciding which of them have merit. The voluntary assistance of organizations such as listed above, will no doubt tend to solve this problem.

Rule (b) prevents an inmate from assisting another in preparation of legal documents, and Rule (d) that such documents found in the possession of an inmate and not pertaining to the latter's case "will be confiscated and destroyed."

Rule (e) provides penalty of disciplinary action (solitary confinement and/or withholding or forfeiture of good time) for violation of the rules.

This Court is of the opinion and therefore rules, that the confiscation and destruction of such legal documents without a hearing accorded to a prisoner violates the right of the prisoner of access to the courts. Furthermore, the rule according to its terms would include a complaint prepared with the intention of filing it with the court. The destruction of the document puts it out of the power of the Bureau of Prisons or of the court to order its production for purpose of filing if so requested by the prisoner.

A rule which would accord the prisoner in question a hearing and would authorize the warden under proper circumstances to retain the paper, giving a receipt therefor, subject to further order of the Bureau of Prisons or a judge, would be valid.

A Judgment and Decree in accordance with the above will be entered.

\* \* \*

This Court wishes to express to Professor Bruce Jacob of the faculty of Emory Law School sincere gratitude for his untiring and effective efforts in this case in behalf of plaintiffs Duncan, Leister and Jackson, plaintiff White having appeared in his own behalf on the trial of the case and by briefs.