**Daniel NOLAN, Petitioner, Appellant,**

v.

**Palmer C. SCAFATI, Superintendent, Massachusetts Correctional Institution, Walpole, Massachusetts, Respondent, Appellee.**

**No. 7538.**

United States Court of Appeals, First Circuit.

Aug. 14, 1970.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

On November 22, 1969, state prisoner Daniel Nolan wrote a letter to the Chief Judge of the federal district court in Boston, seeking relief under 42 U.S.C. § 1983 for two alleged violations of his constitutional rights by the prison officials of the Massachusetts Correctional Institution at Walpole. Petitioner claimed that he had been denied procedural due process by the manner in which the prison officials committed him to extended segregated confinement, and that he had been denied access to the courts by the prison officials' refusal to mail his letter to the Massachusetts Civil Liberties Union seeking advice and assistance on his due process claims. On the basis of this letter, the district court took jurisdiction of the matter pursuant to 28 U.S.C. § 1343 and dismissed the complaint on the grounds that petitioner had been accorded due process at the prison hearing in question. Nolan v. Scafati, 306 F.Supp. 1 (D.Mass.1969). No mention was made of petitioner's other objection concerning his letter to the Civil Liberties Union. This appeal followed, and we appointed legal counsel whose brief has been of considerable assistance to us.

Petitioner's letter alleged that, at the time that he wrote, he had been in segregated confinement for almost a month, had been threatened with five more months of such confinement, and might suffer the loss of three days earned good time for every day of confinement. The district court assumed that this confinement was the result of an adverse decision after hearing—and found that such decision was supported by substantial evidence. But petitioner's letter, the only available evidence at this point, suggests that his month's confinement was *not* because of any adverse decision but because his hearing and decision

Michael B. Keating, Boston, Mass., by appointment of the Court, with whom Foley, Hoag & Eliot, Boston, Mass., was on the brief, for appellant.

James O. Druker, Deputy Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., John J. Irwin, Jr., Asst. Atty. Gen., Chief, Criminal Division, and Lawrence P. Cohen, Asst. Atty. Gen., were on the brief, for appellee.

were being delayed until he stopped insisting on legal assistance at the hearing.[1]

■ The letter, a long and rambling one containing observations general and specific about events past and future, might well have justified summary dismissal but for the combined allegations that petitioner was being subjected to many months of segregated confinement, with multiple loss of good time and consequent delay in time of release from prison,[2] without benefit of any hearing on the charges against him. These allegations were sufficiently serious, we think, that some determination of the underlying facts should have been undertaken before judgment was rendered. So saying, however, we are not to be taken as ruling that petitioner's letter, as it may be rationally although favorably interpreted, necessarily warrants relief. We say merely that, cumulatively, it *may* assert lack of due process. Conversely, we do not hold that every omnibus letter deserves this much attention.

■ On remand, the district court shall, by affidavit and/or hearing (and we stress that many such claims by prisoners may be satisfactorily resolved by affidavit), ascertain the cause, nature, and duration of petitioner's confinement; the consequent effect, if any, on his earned good time credit; and the nature of the safeguards provided at any prison hearing which may have been accorded petitioner. This having been done, the district court should confront the admittedly difficult—and still largely unexplored [3]—question whether the punishment here proposed or inflicted was sufficiently great to require procedural safeguards, and if it was, whether sufficient safeguards were provided. While all the procedural safeguards provided citizens charged with a crime obviously cannot and need not be provided to prison inmates charged with violation of a prison disciplinary rule, some assurances of elemental fairness are essential when substantial individual interests are at stake.

■ We move now to petitioner's second objection concerning which we have a more definite opinion. His letter unambiguously charges that he was denied access to the courts when the prison officials refused to mail his letter to the Massachusetts Civil Liberties Union; this, we think, states a claim upon which relief may be granted. While our remand for reconsideration of his procedural due process claims might be thought to eliminate any possible injury from the single alleged refusal to mail, such remand does not preclude the propriety of any injunctive relief to which petitioner might be entitled if his allegations are borne out by the facts found on remand.

That a state prison inmate has a right of access to the courts was first enunciated in Ex parte Hull, 312 U.S. 546, 549,

1. The letter did contain frequent references to the manner in which the prison disciplinary hearings were conducted. However, those references appear to describe what would happen when he was given a hearing, *not* what had already happened.

2. We are satisfied that, at least in Massachusetts, earned good time credit entitles an inmate to an earlier release from incarceration and that revocation thereof thus has some of the characteristics of extending a sentence. Mass.Gen.Laws Ann., ch. 127, § 129; *see* Gilda v. Commissioner of Correction, 336 Mass. 48, 49, 142 N.E.2d 400 (1957); Lembersky v. Parole Board, etc., 332 Mass. 290, 294, 124 N.E.2d 521 (1955); Greenfield v. Scafati, 277 F.Supp. 644 (D.Mass.1967), aff'd, 390 U.S. 713, 88 S.Ct. 1409, 20 L. Ed.2d 250 (1968). We are aware of decisions which may express a slightly different view of earned good time credit, in part perhaps because of varying state statutory provisions governing good time credit. *See* Douglas v. Sigler, 386 F.2d 684 (8th Cir. 1967).

3. *See* United States ex rel. Campbell v. Pate, 401 F.2d 55 (7th Cir. 1969); Sostre v. Rockefeller, 312 F.Supp. 863 (S.D.N.Y. May 14, 1970); Rodriguez v. McGinnis, 307 F.Supp. 627 (N.D.N.Y.1969); Burns v. Swenson, 300 F.Supp. 759, 762, 764 (W.D.Mo.1969). *Compare* Alverez v. Turner, 422 F.2d 214, 220 (10th Cir. 1970).

61 S.Ct. 640, 641, 85 L.Ed. 1034 (1941), wherein the Court stated that "the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus." In order that this right be assured all inmates, the Court recently held that a state could not prevent one inmate from assisting another inmate in the preparation of his writ. Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The underlying rationale was that access to the courts is effectively denied unless the inmate can obtain some such legal assistance. 393 U.S. at 488, 89 S.Ct. 747. The dissent of Justices White and Black confirmed the desirability of legal assistance, differing only on the grounds that jailhouse lawyers provide too little assistance and create too many problems.

■ Johnson v. Avery clearly stands for the general proposition that an inmate's right of access to the court involves a corollary right to obtain some assistance in preparing his communication with the court. Given that corollary right, we fail to see how a state, at least in the absence of some countervailing interest not here appearing,[4] can prevent an inmate from seeking legal assistance from bona fide attorneys working in an organization such as the Civil Liberties Union. Accord: Burns v. Swenson, 300 F.Supp. at 761–762; see McCloskey v. State of Maryland, 337 F.2d 72, 74–75 (4th Cir. 1964); see also Sostre v. Rockefeller, supra; Hymes v. Dickson, 232 F.Supp. 796 (N.D.Cal.1964).

■ Admittedly, Ex parte Hull and Johnson v. Avery both dealt with an inmate using the writ of habeas corpus to pursue post-conviction remedies. We

are satisfied, however, that the right of reasonable access to the courts—and its corollary right to obtain assistance—extends to inmates using 42 U.S.C. § 1983 to remedy denials of constitutional rights occurring during incarceration.

■ Both the writ of habeas corpus and a § 1983 action are designed for—and limited to—the vindication of federal constitutional rights. We see no sound basis for putting the constitutional rights protected by the writ on a higher plane than those cognizable under section 1983, particularly since there are instances where the same right might be asserted under either form of relief. Secondly, we see no basis for confining the Johnson v. Avery holding to inmates seeking post-conviction relief. Such a rule would allow prison officials to silence—and perhaps punish—inmates seeking vindication of those constitutional rights clearly held by prison inmates. E. g., Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Lee v. Washington, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968), affirming 263 F.Supp. 327 (N.D. Ala.1966); Wright v. McMann, 387 F.2d 519 (2d Cir. 1967); Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968).[5] That prison inmates do not have all the constitutional rights of citizens in society—and may hold some constitutional rights in diluted form—does not permit prison officials to frustrate vindication of those rights which are enjoyed by inmates, or to be the sole judge—by refusal to mail letters to counsel—to determine which letters assert constitutional rights.

Vacated and remanded for proceedings consistent with this opinion.

---

4. The prison officials allegedly refused to mail the letter to the Civil Liberties Union because it contained "lies".

5. Note also that at least three of the above-cited cases reached the court by an action under section 1983.