**Edgar M. CROSS, Plaintiff,**

v.

**Sanger B. POWERS et al., Defendants.**

**No. 69–C–74.**

United States District Court,
W. D. Wisconsin.

June 23, 1971.

Robert L. Reynolds, Jr., Madison, Wis., for plaintiff.

Jeffrey B. Bartell, Mary V. Bowman, Asst. Attys. Gen., Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil case in which plaintiff, an inmate of the Wisconsin State Prison, seeks a declaration that certain prison regulations concerning legal assistance among inmates constitute a denial of plaintiff's constitutional rights; he further seeks to enjoin defendants from enforcing these regulations.

Plaintiff presented his case in chief at a hearing held before this court on June 4, 1970; defendants then moved to dismiss pursuant to Rule 41(b), Fed.R.Civ. P. In an order entered October 20, 1970, I denied the motion to dismiss. Defendants then presented their evidence at a hearing on January 8, 1971, and plaintiff elicited rebuttal testimony on February 4, 1971. In addition to these three hearings, the parties have submitted a stipulation of facts. I find the facts to be as set forth in the following section of this opinion.

## FACTS

The Wisconsin State Prison has promulgated, and at all times relevant to the complaint has enforced, a rule which prohibits inmates in that institu-

tion from taking materials, including legal papers, to prison areas shared commonly with other inmates; from passing legal papers to other inmates; from working on other inmates'' legal problems; and from preparing legal papers, petitions, and documents on behalf of, or jointly with, other inmates. Violations of this rule are punishable by solitary confinement, loss of good time, or deprivation of certain privileges; plaintiff, who wishes to seek assistance from other inmates to aid him in the preparation of various complaints and petitions, is in jeopardy of being punished for violation of the "no-assistance" rule.

In June of 1969, defendants, together with the Wisconsin Division of Corrections, expanded an already-existing law student assistance program in the prison to comply with the requirements of Johnson v. Avery, 393 U.S. 483, 89 S. Ct. 747, 21 L.Ed.2d 718 (1969), as interpreted by the Division's advisers and by certain faculty members of the University of Wisconsin Law School. The student program was staffed by selected senior law students under the direction and supervision of two professors from the University of Wisconsin Law School. From June, 1969, until June, 1970, the services afforded by the student assistance program included the following forms of post-conviction aid: assisting inmates who were within their statutory appeal time by preparing notices of appeal and briefs; preparing and delivering state and federal petitions for writs of habeas corpus; and providing general assistance consisting of contacting inmates' attorneys, getting information on case progress from clerks of court, and answering inmates' questions concerning their cases.

Defendants expanded the student assistance program in late June of 1970. Under the expanded program, the post-conviction services provided during the year commencing in June, 1969, continued; in addition, new services were offered which included the following: interviewing each new admission to the prison, discussing with new inmates any legal problems they might have, dealing with detainers, drafting clemency petitions, and resolving problems related to correctional policies or actions at an administrative level. The students are not permitted to handle court suits challenging prison policies or regulations;[1] if an inmate wishes assistance for a civil rights suit, he is usually referred to an attorney from Wisconsin Judicare.

Wisconsin Judicare is a legal services program funded by the federal government and sponsored by the State Bar of Wisconsin. A staff attorney, pursuant to the Judicare institutional services program, visits the Wisconsin State Prison approximately twice each month. During these visits, the Judicare attorney interviews inmates with regard to civil cases other than habeas corpus petitions and civil rights suits, including such areas of civil law as divorce actions, bankruptcy proceedings, and landlord-tenant matters. Due to problems such as insufficient time, funds, and staff, as well as the desire to maintain a working relationship with the Division of Corrections, at whose pleasure the Judicare program functions in the institutions, Wisconsin Judicare has brought only one suit against the Division of Corrections since October, 1969.

In addition to the law student assistance program, which focuses on post-conviction remedies, and Judicare, whose main emphasis is on civil matters other than habeas corpus actions and civil rights suits, other agencies provide certain forms of legal assistance to inmates of the Wisconsin State Prison: the State Public Defender serves when appointed by the Wisconsin Supreme Court on direct and collateral attacks on convictions; the Clerk of the Wisconsin Supreme Court provides forms for habeas corpus petitions; the Wisconsin Service

---

1. These court suits are usually based on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), the civil rights statutes. Hereinafter, these suits will be referred to as civil rights suits.

Association helps with clemency matters; and the American Civil Liberties Union will occasionally represent an inmate in a lawsuit raising constitutional issues. There is no agency or individual, public or private, available to assist inmates in the preparation of civil rights suits.

Finally, I find that the average level of literacy in the prison is substantially lower than the level of literacy beyond the walls, and I take judicial notice of the records of this court to find that the vast majority of inmates of the Wisconsin State Prison who commence lawsuits in this court are indigent.

## OPINION

It has long been recognized that prisoners' access to the courts is a right of paramount constitutional importance. Johnson v. Avery, 393 U.S. 483, 485–486, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L. Ed.2d 290 (1966); Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961); Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941). Implicit in the conventional notion of access to the courts are two concepts: (1) a person must be free to vindicate in the courts rights secured by the Constitution of the United States; and (2) no custodian may impede the access to the courts of one confined to his custody. Walker v. Pate, No. 18617 (7th Cir. April 20, 1971); United States v. Simpson, 436 F.2d 162, 166–170 (D.C.Cir. 1970); Burns v. Swenson, 430 F.2d 771, 777 (8th Cir. 1970); Nolan v. Scafati, 430 F.2d 548, 551 (1st Cir. 1970); Conway v. Oliver, 429 F.2d 1307, 1308 (9th Cir. 1970); McDonough v. Director of Patuxent, 429 F.2d 1189, 1192 (4th Cir. 1970); Gittlemacker v. Prasse, 428 F.2d 1, 7 (3rd Cir. 1970); Wimberley v. Field, 423 F.2d 1292 (9th Cir. 1970); Sigafus v. Brown, 416 F.2d 105 (7th Cir. 1969); Beard v. Alabama Board of Corrections, 413 F.2d 455 (5th Cir. 1969); Smartt v. Avery, 370 F.2d 788 (6th Cir. 1967); Coleman v. Peyton, 362 F.2d 905, 907 (4th Cir. 1966), cert. de-nied 385 U.S. 905, 87 S.Ct. 216, 17 L. Ed.2d 135 (1966).

Traditionally, the first concept has found express recognition in cases dealing with constitutional rights in the context of state and federal habeas corpus petitions. Johnson v. Avery, supra; Ex parte Hull, supra; Wainwright v. Coonts, 409 F.2d 1337 (5th Cir. 1969); Arey v. Peyton, 378 F.2d 930 (4th Cir. 1967); DeWitt v. Pail, 366 F.2d 682, 685 (9th Cir. 1966); Spires v. Bottorff, 317 F.2d 273, 274 (7th Cir. 1963); United States ex rel. Foley v. Ragen, 143 F.2d 774, 777 (7th Cir. 1944); Novak v. Beto, 320 F.Supp. 1206, 1208 (S.D. Tex.1970); Leeper v. Birzgalis, 314 F. Supp. 808 (W.D.Mich.1970); White v. Blackwell, 277 F.Supp. 211, 217 (N.D. Ga.1967); United States ex rel. Henson v. Myers, 244 F.Supp. 826, 828 (E.D.Pa. 1965); In re Harrell, 2 Cal.3d 675, 87 Cal.Rptr. 504, 470 P.2d 640 (1970). However, this concept is not unique to habeas corpus, but includes any remedy whose ultimate goal is the vindication of federal constitutional rights. Walker v. Pate, supra, slip opinion at 2 ("civil rights case"); Nolan v. Scafati, supra, 430 F.2d 550–551 (suit under 42 U.S.C. § 1983); MacDonald v. Musick, 425 F. 2d 373, 376–377 (9th Cir. 1970), cert. denied 400 U.S. 852, 91 S.Ct. 54, 27 L. Ed.2d 90 (1970) (civil suit for damages—by implication); Courtney v. Bishop, 409 F.2d 1185, 1187 (8th Cir. 1969) (suit to protect civil rights); Edwards v. Duncan, 355 F.2d 993, 994 (4th Cir. 1966) (suit against prison guards); Stiltner v. Rhay, 322 F.2d 314, 316 (9th Cir. 1963), cert. denied 376 U.S. 920, 84 S.Ct. 678, 11 L.Ed.2d 615 (1964) (suit to enforce rights protected by Civil Rights Act); Hatfield v. Bailleaux, 290 F.2d 632, 637 (9th Cir. 1961), cert. denied 368 U.S. 862, 82 S.Ct. 105, 7 L.Ed.2d 59 (1961) ("court proceedings affecting one's personal liberty"); Meola v. Fitzpatrick, 322 F.Supp. 878, 884 (D. Mass.1971) ("complaints * * * about prison conditions"); Carothers v. Follette, 314 F.Supp. 1014, 1022 (S.D.N.Y. 1970) (proceeding against warden);

United States ex rel. Diamond v. Social Service Department, 263 F.Supp. 971, 975 (E.D.Pa.1967) (civil rights action); United States ex rel. Cleggett v. Pate, 229 F.Supp. 818, 821 (N.D.Ill.1964) (civil rights action). The utilization of 42 U.S.C. § 1983, as compared to habeas corpus, as the vehicle for securing constitutional rights was discussed in Nolan v. Scafati, *supra:*

"Admittedly, Ex parte Hull and Johnson v. Avery both dealt with an inmate using the writ of habeas corpus to pursue post-conviction remedies. We are satisfied, however, that the right of reasonable access to the courts —and its corollary right to obtain assistance—extends to inmates using 42 U.S.C. § 1983 to remedy denials of constitutional rights occurring during incarceration.

"Both the writ of habeas corpus and a § 1983 action are designed for—and limited to—the vindication of federal constitutional rights. We see no sound basis for putting the constitutional rights protected by the writ on a higher plane than those cognizable under section 1983, particularly since there are instances where the same right might be asserted under either form of relief. Secondly, we see no basis for confining the Johnson v. Avery holding to inmates seeking post-conviction relief. Such a rule would allow prison officials to silence —and perhaps punish—inmates seeking vindication of those constitutional rights clearly held by prison inmates. *E. g.,* Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Lee v. Washington, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968), affirming 263 F.Supp. 327 (N.D.Ala. 1966); Wright v. McMann, 387 F.2d 519 (2d Cir. 1967); Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968)."

Due to the flexibility of the boundaries of federal habeas corpus relief, 28 U.S.C. § 2243, a petitioner in a habeas corpus action may often seek relief identical to that which may be granted the plaintiff in a suit under 42 U.S.C. § 1983.

Indeed, Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), the most recent Supreme Court pronouncement on prisoners' right of access to the courts, involved claims appropriate to cases which I would denominate extraordinary prisoner suits (as contrasted with habeas corpus proceedings). Edwards v. Schmidt, 321 F.Supp. 68, 69–70 (W.D.Wis.1971). However, Johnson's suit was treated by the district court as a petition for a writ of habeas corpus, Johnson v. Avery, 252 F.Supp. 783 (M.D. Tenn.1966), and the Supreme Court did not disturb the lower court's construction of the pleadings. 393 U.S. at 484, 89 S.Ct. 747.

It thus appears that in determining the content of the right of access to the courts to secure federal constitutional rights, there is no compelling reason for distinguishing between habeas corpus petitions and civil rights actions.

The second concept implicit in the notion of access to the courts, that a custodian may not impede the court access of one confined to his custody, has been recognized not only in habeas corpus proceedings and civil rights actions, but also in a more general sense. Cruz v. Beto, 415 F.2d 325 (5th Cir. 1969) ("legal matters"); Jenks v. Henys, 378 F.2d 334, 335 (9th Cir. 1967) ("legal actions"); Lee v. Tahash, 352 F.2d 970, 972 (8th Cir. 1965) ("presentation of alleged legal wrongs"); Gilmore v. Lynch, 319 F.Supp. 105, 110 (N.D.Cal. 1970) (three-judge panel) ("petitions and complaints"); Prewitt v. State of Arizona ex rel. Eyman, 315 F.Supp. 793, 794 (D.Ariz.1969) ("access to the courts"); Ayers v. Ciccone, 303 F.Supp. 637, 638 (W.D.Mo.1969) ("applications, petitions, and motions"); Talley v. Stephens, 247 F.Supp. 683, 686 (E.D. Ark.1965) ("to test the validity of his confinement or to secure judicial protection of his constitutional rights"); Application of Brux, 216 F.Supp. 956, 957 (D.Haw.1963) (conventional civil suit). However, most of these cases involved some form of physical impediment (*e. g.,* refusal to notarize, confiscation of plead-

ings, refusal to mail) and may have appeared to limit the concept to physical obstruction.

Any such impression was dispelled by Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). At issue in *Johnson* was the constitutionality of a Tennessee prison regulation which provided: "No inmate will advise, assist or otherwise contract to aid another, either with or without a fee, to prepare Writs or other legal matters." Johnson was placed in solitary confinement for violation of this rule. After recognizing the right of inmates to unimpaired access to the courts, the Court invalidated the rule as conflicting with this "paramount federal constitutional [right]." 393 U.S. at 486, 89 S.Ct. 747. Writing in the context of a habeas corpus petition, the Court noted that contained in jails are many prisoners "who are totally or functionally illiterate, whose educational attainments are slight, and whose intelligence is limited," and that most federal courts do not appoint counsel in post-conviction proceedings until a petition has passed an initial screening. The Court then stated:

> "Accordingly, the initial burden of presenting a claim to post-conviction relief usually rests upon the indigent prisoner himself with such help as he can obtain within the prison walls or the prison system. In the case of all except those who are able to help themselves—usually a few old hands or exceptionally gifted prisoners—the prisoner is, in effect, denied access to the courts unless such help is available." 393 U.S. at 488, 89 S.Ct. at 750.

In so ruling, the Court expanded access to the courts beyond the traditional sense of a prohibition against physical obstruction; it introduced a subtle concept of "effective" access to courts.

The perimeter of this concept was not delineated in *Johnson*; the Court contented itself with removing the ban on inmate mutual legal assistance. Thus, the effect of the *Johnson* decision was not to require the Tennessee prison officials to make an affirmative effort to provide legal assistance for inmates, but instead to remove a barrier from the illiterate, indigent prisoner's effective access to the courts for the purpose of vindicating federal constitutional rights.

I now turn to an examination of the record in this case to determine whether the Wisconsin State Prison rule under attack is a barrier to "those unable themselves, with reasonable adequacy, to prepare their petitions [and other initial pleadings]." *Johnson, supra,* at 489, 89 S.Ct. at 751. If the rule does create such a barrier, I must determine whether the prison has provided a "reasonable alternative" to inmate mutual legal assistance. 393 U.S. at 490, 89 S.Ct. 747.

I have already found that many inmates of the Wisconsin State Prison are totally or functionally illiterate, and that the vast majority of the prison's population is indigent. I find further that these illiterate, indigent inmates are unable to adequately prepare their legal pleadings by themselves, and that they are unable to retain counsel to assist them in the preparation of pleadings.[2]

■ Although the prison rule under consideration herein does not prevent prisoners from verbally discussing legal actions with other inmates, it does prohibit carrying legal papers to prison areas shared commonly with other inmates; passing legal papers to other inmates; possessing legal papers of other inmates; and preparing legal papers on behalf of, or jointly with, other inmates. I find that the verbal discussions allowed are not sufficient to assure

2. A recent amendment to the Criminal Justice Act provides for compensation of court-appointed counsel in habeas corpus cases in federal court. 18 U.S.C.A. § 3006A(g) (Supp. 1971). However, since there is no similar compensation provision for attorneys in other civil cases, it would be unrealistic to expect courts to appoint counsel to assist inmates in the preparation of civil rights suits, for example.

effective access to the courts, and that the prison rule under consideration operates as a barrier to illiterate, indigent inmates' effective access to the courts for the purpose of vindicating federal constitutional rights.[3]

Defendants contend that two programs are alternatives to inmate mutual legal assistance: the law student assistance program and the Wisconsin Judicare institutional services program. The law students generally limit their activities to various forms of post-conviction pleadings; Judicare considers itself restricted to civil cases other than habeas corpus petitions and civil rights suits. No other source of assistance is available in such substantial volume as to fulfill the prison population's need for assistance in the preparation of cases designed to vindicate federal constitutional rights. Therefore, I find that the Wisconsin State Prison has not provided a reasonable alternative to inmate mutual legal assistance. Under these circumstances, the prison "may not validly enforce a regulation such as that here in issue, barring inmates from furnishing such assistance to other prisoners." Johnson v. Avery, supra, at 490, 89 S.Ct. at 751.

3. Defendants have sought to justify the no-assistance rule as part of the prison's disciplinary administration and as an effort to protect inmates and courts from unskilled or dishonest jailhouse lawyers. However, these considerations must give way when the right of access to the courts, a "paramount federal constitutional" right, supervenes. Johnson v. Avery, 393 U.S. 483, 486, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969).