**Richard N. NICKL, Plaintiff,**

**v.**

**Wilbur J. SCHMIDT et al., Defendants.**

**No. 71–C–295.**

United States District Court,
W. D. Wisconsin.

Dec. 5, 1972.

Richard N. Nickl, pro se.

Michael R. Klos, Asst. Atty. Gen., Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil action in which plaintiff, a prisoner proceeding *in forma pauperis*, contends that prison rules regulating the opportunity for inmates to engage in legal research and to give and receive legal assistance impose unconstitutional limitations on his access to the courts. The relief which plaintiff seeks includes money damages and an injunction against enforcement of certain of the prison rules. Jurisdiction is alleged under 28 U.S.C. § 1343 and 42 U.S.C. §§ 1981, 1983, and 1985.

The instant case raises issues considered in Cross v. Powers, 328 F.Supp. 899 (W.D.Wis.1971), in which I enjoined enforcement of the Wisconsin State Prison rule prohibiting inmates "from passing legal papers to other inmates; from working on other inmates' legal problems; and from. preparing legal papers, petitions, and documents on behalf of, or jointly with, other inmates. . . ." Soon after this order was entered correctional authorities promulgated new rules [1] which are the main focus of the present lawsuit. Plaintiff contends that as applied these rules vio-

---

1. The rules are as follows:

   1. Inmates will be allowed to carry legal papers and books to recreation and work on legal cases jointly.

   2. Inmates will be allowed to send, via the Cell Hall Sergeant, legal papers to the law library and work jointly on their legal cases and discuss legal matters while in the law library.

   3. Inmates will not be allowed to have legal papers or law books in their possession in the shops or other work areas of the institution.

   4. Inmates will be allowed to loan legal books to other inmates, with the exchange taking place at recreation or the institution law library.

   5. Inmates will be allowed to type legal material for other inmates without compensation of any type.

   6. No inmate will be allowed to receive compensation in any form for doing legal work for other inmates.

   7. Inmates in the Segregation or the North Cell Hall Segregation Unit will be allowed to pass legal papers, law books, or have other inmates in the area where they are housed work on legal matters for them by handing the materials to the officer-in-charge at 10:00 a. m. and at 2:00 p. m. each day. The officer will inspect the material in order to determine if it is legal work and then give it to the receiving inmate. (This does not apply to men in short-term Detention, Solitary or Idle Gang.)

   8. Copies of *Prison legal transcripts* pertaining to a man's case will not be passed from inmate to inmate. If a man owns a *personal copy* of this transcript it can be passed to other inmates just as any other legal material.

   9. All legal materials, including papers, books, drafts, etc., that are carried by an inmate, passed from one inmate to another, or in any form are in possession of an inmate, will be, as in the past, subject to inspection.

late the order of Cross v. Powers, *supra,* and the fourteenth amendment to the federal constitution, depriving him of his constitutional rights under color of state law in violation of 42 U.S.C. § 1983. Plaintiff also contends that defendants have conspired, both before and after the *Cross* decision, to deprive him of his constitutional rights, in violation of 42 U.S.C. § 1985.

In his complaint plaintiff alleges that he is presently confined in Wisconsin State Prison; that between May 30, 1962, the beginning of his incarceration, and the entry of the order in Cross v. Powers, *supra,* he was prohibited from working jointly with his two co-defendants, also inmates at Wisconsin State Prison, in pursuit of post-conviction relief; that subsequent to *Cross,* plaintiff has attempted to meet with his co-defendant Lawrence J. Nutley; that they are unable to meet during recreation since the "North Side," where plaintiff resides, never has joint recreation with the "South Side," where Nutley resides; and that plaintiff has been unable to meet with Nutley since the *Cross* decision.

The complaint alleges further that the prison law library is approximately 12 feet square, contains one table and six to eight chairs, and is thus too crowded and noisy for effective study and consultation; that inmates confined in segregation are denied adequate legal assistance by rule 7, quoted above, since it prohibits them from exchanging legal materials with those outside the segregation area; and that disciplinary hearings at the prison lack minimum procedural safeguards.

Finally, plaintiff alleges that rule 3, quoted above, prohibits possession of legal materials in work areas of the prison; that this rule imposes a substantial restriction on mutual legal assistance since inmates are sent to various common areas of the prison directly from the work areas; that on July 27, 1971, inmate Louis Mourning sent legal papers by an un-named courier to plaintiff at the Prison License Industry for the pur-

pose of securing legal assistance from plaintiff; that defendant Brooks, a prison guard, discovered these papers, confiscated them, and wrote a conduct report on plaintiff; that on July 28, 1971, plaintiff was brought before the Institution Disciplinary Committee, consisting of defendants Manthe, Winans, and Leinweber; and that for the offense of possession of legal papers in an unauthorized area in violation of rule 3 set out above, plaintiff "was given a mark and 7 days" and was prohibited from engaging in joint legal work for seven days.

Defendants have moved for summary judgment as to paragraphs 8(c) and 11 of the complaint. These paragraphs contain allegations that plaintiff has been denied adequate opportunity for legal research and for legal consultation with inmates in the opposite side of the institution. Defendants have moved to dismiss as to the remainder of the complaint.

## MOTION TO DISMISS

Defendants' motion to dismiss applies to plaintiff's challenge to rule 3, forbidding inmates to possess legal materials in work areas; to rule 8, providing that prison transcripts relating to an inmate's case may be viewed only by that inmate; to rule 7, providing that inmates in "the Segregation or the North Cell Hall Segregation Unit" are permitted to exchange legal materials only with other inmates in the same area; and to the claim that procedures in prison disciplinary hearings are unfair.

### Standing

■ ■ Before considering whether plaintiff has stated a claim in his challenge to these rules, I turn to the issue of standing. Defendants assert that plaintiff lacks standing since the complaint alleges only that he has been prevented from giving legal assistance, not from receiving it, and that there is no constitutional right to give legal assistance. However, in his brief, plaintiff cites Johnson v. Avery, 393 U.S. 483,

89 S.Ct. 747, 21 L.Ed.2d 718 (1969), where the Court invalidated a prison rule prohibiting mutual legal assistance among inmates. The plaintiff in *Johnson* alleged only that he was punished for providing legal help to other inmates. Moreover, it is clear that the right to receive legal aid would be empty if correctional authorities were free to punish its donation. Thus, in order to protect the right of the donee to legal help, the donor threatened with punishment for providing legal assistance must be permitted to assert the donee's right. Compare Barrows v. Jackson, 346 U.S. 249, 257, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953).

■ Defendants also argue that plaintiff has no standing to challenge rule 8, allowing prison transcripts relating to an inmate's case to be viewed by only that inmate. Since plaintiff does not allege that he is engaged in an appeal or habeas corpus action requiring the use of a trial transcript, or that he was punished for viewing other inmates' transcripts, defendants assert that he may not challenge this rule. Construing this *pro se* complaint liberally as required by Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), I have concluded that plaintiff has standing to raise this issue. The statements in the complaint that plaintiff is actively engaged in legal work with his co-defendant support the inference that plaintiff is engaged in legal matters requiring the use of his transcript. On the basis of this inference I conclude that plaintiff has shown a sufficient interest in the outcome of this question to overcome the standing problem.

■ Defendants next urge that plaintiff lacks standing to challenge rule 7, relating to availability of legal assistance to inmates in segregation. I concur with defendants' view. Since plaintiff fails to allege that he is in segregation or that he is likely to be so confined in the near future or that he has been punished for assisting inmates in segregation, there is no case or controversy with respect to rule 7, and there-

fore that portion of the claim must be dismissed.

### Statement of a Claim

■ I turn now to the question whether the plaintiff, enjoying standing, has stated a claim in his challenges to rules 3 and 8. Rule 3 forbids the possession of legal materials in work areas. Although Johnson v. Avery, *supra*, 393 U.S. at 490, 89 S.Ct. 747, allows restrictions on the time and location of prison legal activities, the complaint in this case alleges that the effect of rule 3 is to preclude possession of legal materials in most common areas of the prison. Since the facts of this case have not been sufficiently developed to describe the precise impact of rule 3 on the ability of inmates to give legal assistance to one another, this claim cannot be dismissed.

■ Before I consider rule 8, it is appropriate to restate my holding in Morales v. Schmidt, 340 F.Supp. 544 (W.D.Wis.1972). In that case an inmate challenged a prison rule forbidding him to correspond with his sister-in-law. In denying defendants' motion for summary judgment I stated that governmental classifications which result in differential treatment of persons convicted of crime, as opposed to persons not so convicted, are to be treated by the same criteria that are applied to other governmental classifications. Ordinarily an inmate challenging a prison rule bears the burden of demonstrating that the rule is arbitrary. However, if the rule affects a "fundamental" interest, the state must show a compelling governmental interest to justify the differential treatment.

■ In a subsequent case, Van Ermen v. Schmidt, 343 F.Supp. 377 (W.D.Wis. 1972), I held that access to the courts is a "fundamental" interest, and that therefore the state must show a compelling governmental interest to justify restrictions on this right. Plaintiff in *Van Ermen* challenged a prison regulation restricting his use of the prison law library to two hours per week. Since the regulation allegedly interfered with

plaintiff's access to the courts, the state was required to show a compelling governmental interest to justify it. This question arose in *Van Ermen* on a motion to dismiss, and I noted that the nature of such a motion, on which consideration is limited to the content of the complaint, precludes defendant from making the showing necessary to support the regulation. Consequently I denied the motion.

I return now to rule 8, which forbids inmates from reading one another's prison transcripts. Since this rule affects access to the courts, *Van Ermen* requires that it be supported by a compelling governmental interest. Since, for the reasons stated in *Van Ermen*, such a showing cannot be made on a motion to dismiss, the motion must be denied as to this claim.

The next question raised in the motion to dismiss is the constitutionality of the procedures observed in prison disciplinary hearings. In view of my decision in Krause v. Schmidt, 341 F. Supp. 1001 (W.D.Wis.1972), preliminarily enjoining correctional authorities from punishing plaintiffs without observing certain procedural safeguards, I conclude that plaintiff's procedural due process claim in the instant case does not fail to state a claim upon which relief can be granted.

Finally, I conclude that plaintiff has stated a claim under 42 U.S.C. § 1985. Construed liberally the allegations in the complaint show that prior to the *Cross* decision, *supra*, plaintiff was prohibited from working with his codefendants, that subsequent to *Cross* he has been deprived of various constitutional rights, and that defendants conspired to deprive him of these rights.

## MOTION FOR SUMMARY JUDGMENT

Both sides have moved for summary judgment as to plaintiff's claim that prison rules deny him adequate opportunity for legal research and deny him adequate opportunity for legal consultation with inmates residing in the opposite side of the building.[2]

Each side has submitted affidavits in support of its position on this motion. The materials submitted by defendants are attached to an affidavit by Carl R. Manthe, who avers that he is the Associate Warden—Treatment of the Wisconsin State Prison; that he is knowledgeable of the records and files of the Prison; and that the information in the attached intra-division memorandum is taken from prison files and is true to the best of his knowledge. The intra-division communication was prepared by Elmer Cady, then warden of the prison, to R. E. McCauley, Deputy Administrator.

In the communication Warden Cady states that facilities and staff are inadequate to accommodate all prisoners in recreation at one time while maintaining adequate security; that segregation of North and South sides allows the separation of inmates likely to injure one another or likely to engage in misconduct together; that better recreational opportunities can be offered when only half of the inmate population is present; and that an inmate on one side may do legal work with an inmate on the opposite side by arranging a meeting in the law library.

Defendants urge that this unverified communication is admissible in evidence under the business records exception to the hearsay rule. However, the first paragraph of the communication indicates that it was prepared for defendants' attorney to use in defending

---

2. Defendants' motion for summary judgment was confined to these issues. After a number of briefs and affidavits had been filed relative to that motion, plaintiff filed a motion for summary judgment as to all issues presented by this action. Because defendants have not had a fair opportunity to present evidence on the new issues raised by plaintiff's motion, I have decided to confine the scope of plaintiff's motion for summary judgment to the issues presented in defendants' motion for summary judgment.

this lawsuit. It is clear that materials prepared for the purpose of defending a lawsuit are not records made in the ordinary course of business. Hoffman v. Palmer, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). For that reason I have determined that the Cady memorandum is not admissible in support of the defendants' motion for summary judgment.

On the basis of the remaining materials, which I have determined to be admissible, I find, for the purposes of this motion only, that there is no dispute as to the matters set forth under the heading "facts."

### FACTS

Plaintiff is presently confined in the Wisconsin State Prison in the "North Side." His co-defendant, Nutley, is confined in the "South Side." Between May 30, 1962, the date of plaintiff's entry into the prison, and July 8, 1971, the date on which plaintiff filed the complaint in this case, he and Nutley were unable to meet, despite their need for consultation in their efforts to seek post-conviction relief. Since July 8, 1971, they have been permitted to meet for two hours per week in the prison library. They are unable to meet at other times since the North and South Sides never have joint recreation. Plaintiff is not permitted to spend over two hours per week in the library. The prison library is approximately 12 feet square and seats approximately eight persons. I judicially note that Wisconsin State Prison presently houses approximately 700 inmates.

### OPINION

■ ■ Plaintiff contends that the size of the prison library and the limitation upon the time during which he may use it, together, unconstitutionally restrict his access to legal materials. Limitations upon the time during which an inmate has access to legal materials and limitations in the quality of the facilities within which he engages in legal research, may affect a fundamental interest—access to the courts. Of course, if time in the library is "limited" to 20 hours per week per inmate, for example, and the quality of the facilities is "limited" to one desk and chair per inmate and a copious supply of legal materials, the interest of access to the courts would not be affected, and the state would not be required to show a compelling interest to support the "limitations." However, when the time limitations and the quality of the library are reduced to the proportions which exist in the present case, there can be little doubt that there is a serious impact on the inmates' access to the courts. Moreover, it does not yet appear in this record that there is any governmental interest which compels these limitations.

I have decided, despite the strength of plaintiff's case on this issue, not to grant his motion for summary judgment. Because the facts have not been sufficiently developed for me to determine the precise impact of an injunctive order, I am persuaded that it would be imprudent to issue such an order at this stage.

■ The second claim as to which the parties have moved for summary judgment is that prison rules deny inmates an adequate opportunity for legal consultation with inmates residing in the opposite side of the building. In particular, plaintiff asserts that the two hours per week during which he is permitted to consult with his co-defendant on the subject of post-conviction relief is inadequate. In part this claim is related to the claim discussed in the preceding two paragraphs in that plaintiff contends that the crowded condition of the library, where he and his co-defendant are required to meet, is a factor contributing to the inadequacy of the opportunity for legal consultation. This claim is also related to the previous one in that the two hours during which plaintiff is permitted to consult with his co-defendant is the same two hours during which he is permitted to do legal research. Thus any portion of that period which is devoted to research re-

duces the time available for consultation.

I have concluded that this claim must be resolved in the same manner as the claim discussed in the immediately preceding part of this opinion. It is clear that the challenged practice on the part of defendants affects the fundamental interest of access to the courts. In addition, it does not yet appear in this record that there is a state interest sufficient to compel the challenged practice. However, I have decided to deny plaintiff's motion for summary judgment because the insufficiency of the factual record precludes me from making an accurate assessment of the impact of an injunctive order.

Accordingly it is hereby ordered that both parties' motions for summary judgment are denied and that defendants' motion to dismiss is granted as to plaintiff's challenge to rule 7 and is denied as to the remainder of the complaint.