Calvin **SELLARS**, Plaintiff,

v.

Dr. George J. **BETO**, Director, Texas Department of Corrections, and R. M. Cousins, Warden, Ellis Unit, Defendants.

Civ. A. No. 72–H–585.

United States District Court,
S. D. Texas,
Houston Division.

June 23, 1972.

Calvin Sellars, pro se.

R. D. Green, III, Asst. Atty. Gen., Austin, Tex., for defendants.

MEMORANDUM OPINION:

Seals, District Judge.

Petitioner, a prisoner in State custody, and presently under sentence of death, here seeks a permanent injunction, pursuant to the provisions of 42 U.S.C. § 1983, prohibiting prison officials from restricting Petitioner's visitation privileges. Respondents have moved the Court to dismiss the complaint or, in the alternative, for summary judgment in their behalf.

The Texas Code of Criminal Procedure grants to "condemned persons" virtually unrestricted visiting privileges, subject only to "such reasonable rules and regulations as may be made by the Board of Directors of the Texas Department of Corrections." Article 43.17, Vernon's Ann.C.C.P. An affidavit submitted by Respondent Cousins explains

that death row inmates are permitted a visiting list of ten persons—twice the number allowed to regular prisoners. Furthermore, no limit is placed on the number of visits by persons on the list, and the privilege may be exercised for six days each week. Warden Cousins adds, however, that he does not approve visits by former inmates of the Texas Department of Corrections, nor by married women who are not related to the inmate and whose husbands are not on the list.

Petitioner asserts, and Respondents do not deny, that Warden Cousins refuses to allow Petitioner to receive visits from his brother, Lucky Sellars, a former inmate of the TDC. Implying that "all other death row prisoners" are permitted to receive visits from former TDC inmates, Petitioner contends that Warden Cousins' prohibition is an act of retribution, whose purpose is to dissuade Petitioner from initiating further litigation in federal court against prison officials.[1] Respondents deny that their actions are in any way motivated by Petitioner's legal maneuvers, or that Petitioner's visitation privileges differ from those accorded other death row inmates. Petitioner has furnished the Court with a letter he claims to have written to Dr. Beto on February 21, 1972, more than two months prior to the filing of the present action. According to Petitioner, Dr. Beto, although apprised in the letter of the matters which form the basis of this suit, "has refused to intervene."

 Until recently, a federal district court in this Circuit could, with impunity, dismiss on the pleadings all but the most shocking of prisoner complaints,

secure in the belief that Granville v. Hunt, 411 F.2d 9 (C.A. 5, 1969), and its progeny[2] were to be literally applied. Within the past year, however, the Court of Appeals has developed a new standard. Upon the mere allegation that a prisoner is being punished for attempted exercise of a constitutional right, the district court must now make a factual inquiry into the truth of that assertion.

In Andrade v. Hauck, 452 F.2d 1071 (C.A. 5, 1971), an inmate of the Bexar County Jail complained that he had been denied access to the jail's commissary "by way of retribution for writing to a judge of the United States District Court to complain about the way which the commissary was being operated." Affirming the principle that

"* * * every prisoner has a constitutional right of access to the courts to present any complaints he might have concerning his confinement,"

the Court adds that a prisoner

"* * * cannot be disciplined in any manner for making a reasonable attempt to exercise that right." Andrade, supra, at 1072.

Such an approach seems inconsistent with another recent decision by the Court of Appeals. In Karr v. Schmidt, 460 F.2d 609, 1972, a plurality of the Court, sitting in banc, devised a new standard for cases attacking hair length regulations promulgated by local public school authorities. After taking note of the "multitude of lawsuits which have recently inundated the federal courts" on this issue,[3] the Court justified its

---

1. Petitioner concurrently has four such suits pending in this District; in addition, he is one of the named plaintiffs in two class action suits against prison officials.

2. Carswell v. Wainwright, 413 F.2d 1044 (C.A. 5, 1969) ; Campbell v. Wainwright, 416 F.2d 949 (C.A. 5, 1969) ; Roy v. Wainwright, 418 F.2d 231 (C.A. 5, 1969) ; Diehl v. Wainwright, 419 F.2d 1309 C.A. 5, 1970) ; Brown v. Wain-

wright, 419 F.2d 1376 (C.A. 5, 1970) ; O'Brien v. Blackwell, 421 F.2d 844 (C.A. 5, 1970) ; Conklin v. Wainwright, 424 F.2d 516 (C.A. 5, 1970) ; Haskew v. Wainwright, 429 F.2d 525 (C.A. 5, 1970).

3. No school haircut case has been filed in this Court during the past 18 months. By comparison, more than a dozen prisoner complaints under § 1983 have been docketed.

new rule of per se validity in the following manner:

" * * * it [our decision today] reflects recognition of the inescapable fact that neither the Constitution nor the federal judiciary it created were conceived to be keepers of the national conscience in every matter great and small. The regulations which impinge on our daily affairs are legion. Many of them are more intrusive and tenuous than the one involved here. The federal judiciary has urgent tasks to perform, and to be able to perform them we must recognize the physical impossibility that less than a thousand of us could ever enjoin a uniform concept of equal protection or due process on every American in every facet of his daily life." *Karr* supra, at 618.

The apparent inconsistency between the results of *Andrade* and *Karr* may perhaps be explained as the difference between state prisoners and public school students. Whatever the explanation, *Andrade* makes clear that supervision of every facet of the daily life of an inmate has become one of the "urgent tasks" which district courts in this Circuit are obliged to perform. Provided he accompany his complaint with an accusation that he is being punished in retaliation for the exercise of a constitutional right, a prisoner may now compel an evidentiary hearing in federal court when *any* disciplinary action is taken against him. The inmate who has casually written a note to a federal judge need only allege that such act resulted in his denial of an hour of television. That kind of complaint will require a full-scale factual inquiry by a federal district judge.

In the case at bar, Petitioner's claim that he was denied visiting privileges falls squarely within the ambit of *Andrade*. Accordingly, an evidentiary hearing will be set on this court's October civil assignment.