Charles R. WREN, Jr., Appellant,

v.

Norman A. CARLSON et al., Appellees.

No. 73–1846.

United States Court of Appeals, District of Columbia Circuit.

Sept. 12, 1974.

Wilkey, Circuit Judge, concurred in result and filed opinion.

Charles R. Wren, Jr., pro se.

No appearance for appellees.

Before BAZELON, Chief Judge, and ROBINSON and WILKEY, Circuit Judges.

PER CURIAM:

Appellant, an inmate of the United States Penitentiary at Atlanta, Georgia,[1] filed *pro se* in the District Court for the District of Columbia a petition seeking a writ of habeas corpus on the ground that he was constitutionally entitled to, but was refused, the right to conjugal visits by his wife during the period of his incarceration. The petition named as respondents the Director of the Bureau of Prisons and the Attorney General of the United States, the appellees here, and challenged as cruel and unusual punishment an administrative policy banning such visitation in federal penal institutions.[2] In response to the District Court's order to show cause why the petition should not be granted, appellees opposed the action on the premise that it could be brought only in the judicial district of appellant's confinement. The District Court thereupon dismissed the petition for lack of jurisdiction, but granted appellant leave to appeal *in forma pauperis*.

When notified of the docketing of the appeal and asked whether he wished an appointment of counsel, appellant filed a motion for permission "to withdraw [his] complaint and litigation, with leave to refile same at [a] later date." As reasons for the motion, appellant alleges that his health is impaired and that, in retaliation for the litigation, he has been severely harassed by penitentiary personnel.[3] The case is now before us on the motion for leave to relinquish the appeal.

We have no call to consider the constitutional argument which appellant's habeas corpus petition ushered in. The District Court dismissed the petition, not for failure to state a claim upon

---

1. The sentence appellant is serving was imposed by the District Court for the District of South Carolina.

2. Prior to institution of his action, appellant's wife had presented to the Director of the Bureau of Prisons a request for such visits. The request was denied by a letter stating that "[w]e have no provisions for conjugal visiting in any of our institutions."

3. The pertinent allegation of the petition reads as follows:

   From the date of confinement, July, 1971 until and including December 1972 (some 19 months), Movant-Petitioner maintained an excellent work and conduct record—but in December, 1972 when he actively began research/drafting of the instant case/action, the Administration and their agents began harassing, intimidating, coercing, threatening, and finally falsely accusing Movant-Petitioner actually illegally and unlawfully "convicting" him of "institutional infractions" of *rules* on a prejudicial and discriminatory basis by a biased "Court" comprised of officials of the institution, whereby Movant-Petitioner was punished without due process and equal protection of the law in that he was forced to sleep on the floor in a hot, almost airless, over-crowded, unsanitary, inhumane, dehumanizing, unhealthy "hole" where he could not see a doctor *nor* receive tuberculosis medications, and caught a severe summer cold. (emphasis in original).

which relief could be granted,[4] but for lack of subject-matter jurisdiction.[5] Consequently, the court never addressed appellant's constitutional contention, nor would that contention be reached on this appeal. Rather, the only issue which the appeal presents for resolution is whether the District Court erred in dismissing the petition for jurisdictional reasons. And, we repeat, the question immediately before us is whether appellant's motion to withdraw the appeal should be allowed.

■ The latter question would ordinarily present a simple task, particularly in view of the poor condition of appellant's health, but it has been given a new cast by his allegations of retaliatory mistreatment by prison personnel. "Every prisoner," the Fifth Circuit aptly declares, "has a constitutional right of access to the courts to present any complaints he might have concerning his confinement. He cannot be disciplined in any manner for making a reasonable attempt to exercise that right." [6] If indeed the motion to withdraw was a product of persecution germinated by appellant's assertion of his claim judicially, the motion is not made voluntarily. And it goes without saying that the courts will not tolerate such a perversion of the judicial process, or aid the unlawful thwarting of the litigation.

In this state of affairs, we find ourselves confronted with something of a dilemma. Certainly we could not, in the face of the grave charge which appellant makes, act on his motion without further investigation.[7] But just as surely, this court, as an appellate tribunal, is not equipped to undertake the kind of factual exploration which the situation demands. We could, of course, remand the inquiry to the District Court, but only if, contrary to its already-expressed view, that court was empowered to adjudicate the case when it first came there. And even if it was, the factual predicate, if any, for appellant's complaint of abuse resides in the penitentiary in Atlanta, and only dubiously would a court in the District of Columbia attempt to thrash out the factual issues which expectably would arise.

■ The interplay of these considerations leads us unavoidably, in the search for the answer, to reexamine the District Court's jurisdictional position. Doing so, we have little difficulty in concluding that the District Court possessed jurisdiction to entertain appellant's action. We need not ponder whether there was jurisdiction in habeas corpus per se [8] for, at the least, appellant's *pro se* petition was treatable alternatively as an application for relief via some other suitable remedy—mandamus, injunction or declaratory judgment.[9] With both defendants in the District of Columbia, and charged with unconstitutionally barring conjugal visitation between federal inmates and their spouses, there was both jurisdiction and venue for mandamus [10] and, upon satisfaction of the jurisdictional-amount require-

4. See Fed.R.Civ.P. 12(b)(6).

5. See Fed.R.Civ.P. 12(b)(1).

6. Andrade v. Hauck, 452 F.2d 1071, 1072 (5th Cir. 1971). Accord, Simpson v. Wainwright, 488 F.2d 494, 496 (5th Cir. 1973); Sellers v. Beto, 345 F.Supp. 499, 500 (S.D. Tex.1972).

7. The petition makes clear that withdrawal of the appeal is sought because of the alleged harassment as well as because of appellant's physical condition. The Government has not undertaken to deny appellant's allegations in either respect.

8. See, *e. g.*, Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed. 2d 443 (1973); Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972).

9. See *Hudson v. Hardy*, 137 U.S.App.D.C. 366, 367, 424 F.2d 854, 855 (1970); Barnett v. Rodgers, 133 U.S.App.D.C. 296, 299 n.4, 410 F.2d 995, 998 n.4 (1969); Roberts v. Pegelow, 313 F.2d 548, 550 (4th Cir. 1963); Mead v. Parker, 464 F.2d 1108, 1111–1112 (9th Cir. 1972); Owens v. Alldridge, 311 F. Supp. 667, 669 (W.D.Okl.1970).

10. See 28 U.S.C. § 1361 (1970).

ment,[11] for injunction and declaratory judgment.[12] Of course, an entirely different question is whether the District Court should have transferred appellant's suit to the judicial district in which appellant was incarcerated.[13] The court did not pursue that course, however, and dismissal for lack of jurisdiction was not in order.

But even though the District Court has power to act in this case, the further question is whether its action in connection with the allegations of harassment would otherwise be appropriate. The answer, we believe, is plainly in the negative. Ostensibly the witnesses are in the penitentiary in Atlanta, and certainly their convenience would be served by the transfer of the litigation to the Northern District of Georgia, wherein the penitentiary is located.[14] Other factors bearing on "the interest of justice"[15] point in the same direction.[16] And we are unable to perceive "any compelling reason [which]

requires the matter [of harassment] to be litigated here."[17]

We are mindful that the District Court is authorized to transfer this case only to a district "where it might have been brought,"[18] a requirement necessitating proper venue[19] and, as well, amenability of the defendants to process emanating from the transferee court.[20] But. venue in the Northern District of Georgia would have been proper whether the assumed objective of appellant's lawsuit is a writ of habeas corpus[21] or mandamus,[22] or an injunction or a declaratory judgment.[23] And it is equally clear that the District Court for that district possessed the means of acquiring personal jurisdiction over the federal officers at whose hands appellant seeks relief.[24]

Accordingly, we reverse the District Court's jurisdictional determination and remand the case with the instruction that it be transferred to the Northern District of Georgia. Since neither the

11. See 28 U.S.C. § 1331(a) (1970); Gomez v. Wilson, 155 U.S.App.D.C. 241, 250–252, 477 F.2d 411, 419–421 (1973).

12. See 28 U.S.C. §§ 1331(a), 1391(b), (e) (1970).

13. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1970).

14. See note 13, *supra*.

15. See note 13, *supra*.

16. Young v. Director, U. S. Bureau of Prisons, 125 U.S.App.D.C. 105, 106–107, 367 F. 2d 331, 332–333 (1966).

17. *Id.* at 107, 367 F.2d at 333.

18. 28 U.S.C. § 1404(a) (1970), quoted *supra* note 13.

19. Van Dusen v. Barrack, 376 U.S. 612, 619–624, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); Hoffman v. Blaski, 363 U.S. 335, 342, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); Illinois Scientific Devs., Inc. v. Sirica, 133 U.S.App.D.C. 249, 250, 410 F.2d 237, 238 (1969).

20. Hoffman v. Blaski, *supra* note 19, 363 U. S. at 343, 80 S.Ct. 1084; Foster-Milburn Co. v. Knight, 181 F.2d 949, 952 (2d Cir. 1950);

Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970), cert. denied, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971).

21. See 28 U.S.C. § 2241(a) (1970).

22. See 28 U.S.C. § 1361 (1970).

23. "A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, . . . may, except as otherwise provided by law, be brought in any judicial district in which . . . (2) the cause of action arose, or . . . (4) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e) (1970). We cannot be sure that jurisdiction in the Northern District of Georgia can be founded on the theory that appellant is resident therein, for "[o]ne does not change his residence to the prison by virtue of being incarcerated there." Cohen v. United States, 297 F.2d 760, 774 (9th Cir. 1962), cert. denied, 369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962). But, in any event, appellant's purported cause of action—the denial of conjugal visitation by his wife in the United States Penitentiary—arose in the Northern District of Georgia wherein the penitentiary is situated. Ellingburg v. Connett, 457 F.2d 240, 241 (5th Cir. 1972).

24. See Fed.R.Civ.P. 4(d)(5).

District Court's action nor ours rests upon any determination on the merits, neither will foreclose litigation of appellant's claims there.[25]

So ordered.

**WILKEY, Circuit Judge:**

I concur in the result my two colleagues reach. Certainly this case belongs in the Northern District of Georgia, the District of appellant's incarceration[1] if, indeed this case belongs in any court at all.

Logically and historically, imprisonment has usually resulted in a deprivation of conjugal rights. No other result could be expected from incarceration and forced separation from the rest of society. No prison is designed to be just like home. Deprivation of conjugal rights, like many deprivations flowing from imprisonment, is thus neither *cruel* nor *unusual* punishment within the meaning of the Eighth Amendment.

In the few instances where conjugal visitations have been granted, this has always been done by act of the legislative or executive, as an act of grace or experiment in rehabilitation, not because of any constitutional mandate to grant such a privilege. No decision of any court has been cited requiring conjugal visitations as a matter of constitutional right, and I am aware of none. There are decisions to the contrary.[2]

I would remand this "case" to the District Court to dismiss as frivolous.[3]

---

25. See Sanders v. United States, 373 U.S. 1, 7–19, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); Kaufman v. United States, 394 U.S. 217, 221–228, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969); Heard v. United States, 129 U.S. App.D.C. 100, 101–102, 390 F.2d 866, 867–868 (1968); Raiford v. United States, 483 F.2d 445, 446 (9th Cir. 1973).

1. As a matter of habeas corpus jurisdiction, it is doubtful that the District Court for the District of Columbia has even the power to entertain this action. Under the mechanical test employed in some older cases, the fact that the action was not brought in the location of the "immediate custodian" of the petitioner would alone have barred the exercise of jurisdiction. See, e.g., Sanders v. Bennett, 80 U.S.App.D.C. 32, 148 F.2d 19 (1945); Jones v. Biddle, 131 F.2d 853 (8th Cir. 1942). Recent cases suggest a more functional approach to habeas jurisdiction. Their concern is less with identifying the actual physical custodian of the petitioner (if, indeed, he has one) and more with evaluating the meaningfulness and sufficiency of the petitioner's contacts with the forum. Cf. Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 493–494, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); Eisel v. Secretary of Army, 155 U.S.App.D.C. 366, 369–381, 477 F.2d 1251, 1254–1276 (1973). The contacts of the appellant in this case with the District of Columbia are minimal. If habeas jurisdiction were allowed, all prisoners dissatisfied with prison conditions anywhere in the country could bring such actions in this district. (In 1973 there were over 23,000 inmates in the Federal Prison system. Weekly Report, U. S. Department of Justice—Bureau of Prisons, Federal Prisoners Confined Week of 6/14/73.) Of course, jurisdiction may properly be obtained under an application for mandamus, an injunction, or declaratory relief; but, as our opinion makes clear, the same factors of convenience which militate against the assumption of habeas jurisdiction dictate a transfer of this case to the Northern District of Georgia under section 1404(a) if jurisdiction is laid on an alternative ground. See Young v. Director, United States Bureau of Prisons, 125 U.S.App.D.C. 105, 367 F.2d 331 (1966).

2. Mott v. Klein (U.S.District Court of New Jersey, 23 July 1974), in which the action was dismissed as frivolous.

3. Fed.R.Civ.P. 12(b)(6); 28 U.S.C. § 1915(d).