Roy **BUISE**, Plaintiff-Appellant,

v.

Donald **HUDKINS**, Individually and as Superintendent of the Indiana State Farm, et al., Defendants-Appellees.

No. 77–1731.

United States Court of Appeals, Seventh Circuit.

Heard Feb. 28, 1978.

Decided Sept. 26, 1978.

---

McMillen, District Judge, sitting by designation, filed concurring opinion.

John D. Blumenthal, Indianapolis, Ind., for plaintiff-appellant.

Kermit R. Hilles, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before CUMMINGS and TONE, Circuit Judges, and McMILLEN, District Judge.*

CUMMINGS, Circuit Judge.

Plaintiff is presently a prisoner confined in the Indiana State Prison in Michigan City, Indiana. In February 1975, he filed an amended complaint under the Civil Rights Act (42 U.S.C. § 1983) asserting that he was wrongfully transferred to the prison from the Indiana State Farm in Greencastle (Putnamville), Indiana, in March 1974 due to his attempts to assist other prisoners in the preparation of legal documents, to have a law library provided at the State Farm and to establish an inmate council at the State Farm. Five of the defendants are officers or employees of the State Farm and the sixth defendant is the Commissioner of the Indiana Department of Correction.

According to the amended complaint, on January 29, 1974, plaintiff, then a prisoner at the Indiana State Prison, was transferred to the Indiana State Farm to become its librarian.[1] After his transfer, plaintiff served as a jailhouse lawyer in assisting other inmates in legal matters. Defendants allegedly told him not to assist other prisoners with their legal work. On March 13, 1974, defendant Badger, the Director of Treatment and Classification at the State Farm, assertedly wrote a memorandum to the warden of the Indiana State Prison indicating that plaintiff was being transferred back to that institution due to his legal activities at the State Farm. In part, the memorandum stated as follows:

"Mr. Buise has done well and is to be commended for his work in the library, however, his insistence in trying to establish a writ writing procedure and an inmate council at this institution has caused some problem for the staff. We feel it is in his best interest to be returned to your institution."

On the following day, plaintiff was transferred from the minimum security State Farm to the maximum security Indiana State Prison.

One of the theories of the complaint was that plaintiff's transfer to Michigan City because of his attempt to provide legal assistance to other prisoners and to establish a law library deprived him of constitutional rights. Defendants' refusals to permit a law library and to allow plaintiff to assist other State Farm prisoners with their legal problems are also said to have deprived him of constitutional rights. Plaintiff requested a declaratory judgment and an injunction requiring defendants to return him to the Indiana State Farm in his position as librarian and to provide an adequate law library. He also requested $20,000 in compensatory damages and $50,000 in punitive damages.

On July 8, 1977, the district court released its findings of fact and conclusions of law in this matter. The court found that defendant Badger told a counselor at the State Prison to advise plaintiff that his job assignment at the State Farm would be as a librarian and not as a writ writer. Both of them so advised plaintiff. During his stay at the State Farm, prisoners sought legal advice and assistance from plaintiff. Judge Steckler found that there was no institutional policy concerning inmates assisting each other in preparing legal papers on their own time but that there was an informal policy against inmates assisting other inmates with their legal problems while they were supposed to be performing an assigned duty. He also found that there was an informal policy against using the library as a writ room. State Farm had no law library, writ room or inmate council, and legal assistance from the Public De-

---

* District Judge Thomas R. McMillen of the Northern District of Illinois is sitting by designation.

1. The district judge found that when Buise was transferred, he was informed that his job assignment would be as librarian, not as writ writer. At the oral argument we were informed that defendants had agreed not to argue below that the restrictions on Buise's activity were proper on the ground that Buise had accepted those restrictions as conditions for a preferred transfer. Therefore the district court made no findings of fact on whether the transfer was conditional and we need not consider the legal sufficiency of any condition as a justification for defendants' conduct.

fender was available to inmates only on request. During his stay at the State Farm, petitioner sought the establishment of a law library, writ room and inmate council.

The district court also found that petitioner was transferred back to the State Prison partly because he sought to establish a law library, writ room and inmate council and because petitioner was pursuing [legal assistance] objectives during working hours. Judge Steckler stated that petitioner performed his duties in the library adequately and "completed his work early enough to allow free time." At the time of petitioner's transfer, defendant Badger wrote a letter commending petitioner's work in the library at the State Farm but stated that "in his opinion plaintiff had not lived up to the agreement on writ writing and that his efforts to establish a writ writing procedure and inmate council had caused some problems for the staff." Petitioner was returned to the Indiana State Prison on March 14 where the conditions were not as advantageous for plaintiff as those at the State Farm.

The district court concluded that at the time of his transfer, prison officials had the authority to transfer inmates at their discretion and specifically that they had the authority to return petitioner to the State Prison. The court also concluded that petitioner had no established right to be a writ writer while on duty and that he failed to prove any damages. We reverse and remand for the possible assessment of damages and injunctive relief.

## I. CONSTITUTIONAL VIOLATIONS

Both parties appear to agree that plaintiff was transferred from the State Farm to the State Prison largely for four reasons (Tr. 149–150):[2]

1. He was rendering legal assistance to other prisoners at the State Farm;

2. He was attempting to establish a law library there;

3. He was attempting to establish a writ department there;

4. He was attempting to establish an inmate council there.

Plaintiff contends that each of these activities is an impermissible basis for transfer and further contends that he has a right to render legal assistance and a right to an adequate law library.[3] The defendants insist that the transfer was proper and also dispute plaintiff's claimed rights to be a jailhouse lawyer and to have a law library available.

### A. Jailhouse Lawyer Activities

While not so identified by the parties, two separate claims can be drawn from Buise's jailhouse lawyer activities. The first is Buise's claim that his own rights were violated when he was transferred assertedly in retaliation for his jailhouse lawyer activities, and the second is his claim on behalf of other inmates that their right of access to the courts was infringed by his transfer. There is no contention that plaintiff does not have standing to assert his own interests and *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718, establishes that he can raise the claims of the other inmates because in *Johnson* only the jailhouse lawyer was a party and yet the decision rested on the denial of access to the courts for his fellow inmates. See 393 U.S. at 487, 89 S.Ct. 747; accord *Haymes v. Montayne*, 547 F.2d 188, 191 (2d Cir. 1976), certiorari denied, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063; see generally Sedler, *Standing to Assert Constitutional Jus Tertii in the Supreme Court*, 71 Yale L.J. 599 (1962).

Although the district court found that plaintiff was transferred in part because he was writing writs during working hours,

---

**2.** Although defendants hint that plaintiff also was transferred because of his psychological inaptitude as librarian (Br. 4), the amended findings of fact by the district court do not include that factor as a basis for the transfer. In fact, the district court found that plaintiff

"performed his duties in the library adequately." Amended Finding No. 25.

**3.** It is not clear why plaintiff did not also request injunctive and declaratory relief as to the inmate council and writ room.

the evidence is overwhelming that to the extent the transfer was based on writ writing, it was based on writ writing at any time and not during working hours. It is uncontradicted that plaintiff was ordered not to assist other prisoners in legal matters at any time, and apparently he was never told that this restriction applied only during working hours (Tr. 33, 72–73, 165, 166, 206, 207). Admittedly there is no documentary evidence of a policy limited to working hours. Moreover, while defendants claimed that the transfer was based on the fact that plaintiff "would not adhere to the institutional policy" (R. 165), they introduced only one incident showing a violation of the supposed informal policy against writ writing during working hours,[4] compared to the 25 times per day that advice was sought from Buise (Tr. 37). In this context, it was clearly erroneous to find that Buise was transferred for writing writs during working hours.

██ From the perspective of the remaining inmates, Buise's transfer for writing writs violated their constitutional right of access to the courts (*Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718) if it left them without an alternate means of access to the courts. The defendants admit that no law library was available and do not deny that Buise was the State Farm's only jailhouse lawyer but insist that the availability of the Public Defender is sufficient to assure access.

It is well established, however, that the state bears the burden of demonstrating the adequacy of such an alternate means of access. See, *e. g., Sostre v. McGinnis*, 442 F.2d 178, 201 (2d Cir. 1971) (*en banc*), certiorari denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740; 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254; *Novak v. Beto*, 453 F.2d 661, 664 (5th Cir. 1971), certiorari denied, 409 U.S. 968, 93 S.Ct. 279, 34 L.Ed.2d 233; *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct.

1491, 52 L.Ed.2d 72, adds that mere availability is not enough and that the key inquiry is whether a "reasonably adequate opportunity" to present claimed violations of fundamental constitutional rights is provided. Here the state merely asked the district court to take judicial notice of an Indiana statute assertedly requiring that certain assistance be provided by the state's Public Defender,[5] and the only evidence adduced was Superintendent Hudkins' statement on cross-examination that the Public Defender's availability "was entirely at the discretion of the office of the public defender * * * people would write to them and they would come down on occasion" (Tr. 101–102).[6] Neither of these attempts to prove access is sufficient. Judicial notice of a statute requiring certain services, even assuming the requirements fully cover inmates' needs, is insufficient because it does not follow from the existence of the statute that an alternative actually exists. The Public Defender may disregard the statute, or, more likely, the office simply may lack the resources necessary to provide meaningful access at each of the state's institutions. In this context a mere reference to the statute does not carry the state's burden of proof of adequate alternatives. Nor can the state rely on the fact that at inmates' request the Public Defender would come down "on occasion." In fact, this type of availability is similar to the situation in *Johnson v. Avery*, 393 U.S. 483, 489, 89 S.Ct. 747, 21 L.Ed.2d 718, that prompted the Supreme Court to require an inquiry into the use of writ writers. In addition, the fact that 25 inmates per day contacted Buise is itself an indication that he was the only real source of legal advice for the inmates. In the absence of a "regular system of assistance by public defenders" (*Id.* at 489, 89 S.Ct. at 750), the state should be able to prove before it eliminates other means of access that absent unusual circumstances the Public Defender responds in a reasona-

---

4. Instead, the district court found that Buise completed his work as librarian "early enough to allow free time." Amended Finding No. 26.

5. See Ind.Code 33–1–7–2.

6. See Amended Finding of Fact No. 19. To the extent that Finding 19 implies that the Public Defender responds to each request, it is unsupported by the record.

ble manner to each inmate request and that inmates have some awareness of this alternative. See generally *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72. Having failed to do so here, the state cannot rely on the availability of the Public Defender.

Apparently recognizing the inadequacy of the proof regarding the Public Defender, the state argues that accepting Buise's claim that he could not be transferred would mean that a prison could never transfer its last writ writer, no matter what his misconduct and no matter what the prison's administrative needs. In practice, it is not clear that such a dilemma would ever arise, since the state could transfer the inmate and simply arrange to substitute a suitable alternative means of access to the courts. Whatever the theoretical merit of the state's argument, it is not properly presented here because, in light of our finding above, the state did not transfer Buise for misconduct or for a proper administrative purpose, but transferred him for writ writing and other protected activities. Thus even assuming the inmates' need for a writ writer could be balanced against the need to punish or move a writ writer by transfer (cf. *Laaman v. Perrin*, 435 F.Supp. 319, 328–329 (D.N.H.1977)), no proper administrative or punitive reason for transfer appears on this record.

■ For these reasons, Buise would have been entitled to declaratory relief that the transfer was improper and to a retransfer if he so desired. However, since this theory is based on Buise's assertion of the rights of other inmates, in the absence of proper class certification, plaintiff offers no reason why he should be able to recover damages for a violation of the rights of other inmates, particularly in light of the Supreme Court's emphasis in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252, on the compensatory nature of Section 1983 damages and the fact that the district court would be unable practically to require Bruise to return the damages to the other inmates.[7]

■ In order for Buise to recover damages for being transferred as a result of performing jailhouse legal services, he must prove that he had an independent right to serve as a jailhouse lawyer for other inmates. The state's argument that even if he did so prove it could still transfer him because it can make a transfer "for whatever reason or for no reason at all" (*Meachum v. Fano*, 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451) is unpersuasive.[8] While *Meachum* held that a prisoner has no inherent due process interest in not being transferred sufficient to justify a hearing, it and its companion case, *Montayne v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466, did not hold that a transfer could be made in retribution for the exercise of protected rights. See *Montayne v. Haymes*, 427 U.S. 236, 244, 96 S.Ct. 2543, 49 L.Ed.2d 466 (Stevens, J., dissenting). Instead, it is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper. As the Supreme Court stated in *Mount*

---

**7.** There is no compelling need to allow Buise to recover the inmates' damages since in light of this opinion and its recognition of a constitutional violation it may not be difficult for the other inmates to obtain legal representation to vindicate their access rights.

**8.** The state argues that the transfer was not a punishment because the prison officials deemed it to be administrative rather than punitive. While it may be true that some transfers conceivably might not serve as a penalty for participation in protected conduct, the test for whether a transfer is sufficiently punitive would not be whether the prison officials deemed it punitive. Rather it would be an inquiry into, among other things, the relative conditions in the institutions and the harms of dislocation itself, and how the inmate perceived them. See *United States v. Montayne*, 505 F.2d 977, 981–982 (2d Cir. 1974), reversed on other grounds, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466, on remand, 547 F.2d 188, 191 (2d Cir. 1976). Here it is undisputed as Buise testified (Tr. 26–30) that the conditions at the Indiana State Prison were considerably less attractive than those at the State Farm, so that his transfer penalized his exercise of legal activities in that it caused him to be placed in less desirable surroundings.

*Healthy City Board of Education v. Doyle*, 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471, a school teacher discharge case, "Even though he could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to require him * * *, he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms. *Perry v. Sindermann*, 408 U.S. 593, [92 S.Ct. 2694, 33.L.Ed.2d 570] (1971)." Put another way, while plaintiff may not have a due process interest or expectation in remaining at the same institution, he does have a First Amendment interest or expectation in not being punished for the exercise of activity protected under that provision.

■ The question whether a transfer based on writ writing is actionable therefore becomes the question whether jailhouse lawyering is a protected activity. While much attention has been focused on an inmate's right to be his own jailhouse lawyer (*Sigafus v. Brown*, 416 F.2d 105 (7th Cir. 1969); *Wren v. Carlson*, 165 U.S.App. D.C. 70, 72, 506 F.2d 131, 133 (1974)) and to obtain assistance from other inmates (*Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718), less attention has been given to whether serving as a jailhouse lawyer merits any constitutional. protection. But cf. *Ayers v. Ciccone*, 303 F.Supp. 637 (W.D. Mo.1969), appeal dismissed, 431 F.2d 724 (8th Cir. 1970). Outside prison walls, the Supreme Court has recognized that "the right to cooperate in helping and advising one another in asserting their rights" (*United Transportation Union v. State Bar of Michigan*, 401 U.S. 576, 579, 91 S.Ct. 1076, 28 L.Ed.2d 339) is protected by the First Amendment in a variety of contexts. See, e. g., *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405; *Brotherhood of Railroad Trainmen v. Virginia State Bar*, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89; *United Transportation Union v. State Bar of Michigan*, 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339; *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417. Whether the same type of activity is protected inside the prison is determined by applying the principle of *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495, that an inmate does not retain those First Amendment rights that are "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." In particular, it has been emphasized that "perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are * * * associational rights." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629.

■ In *Aikens v. Jenkins*, 534 F.2d 751, 755 (7th Cir. 1976), a case involving restrictions on prisoners' literature, we held that "the burden of showing * * * special characteristics justifying restrictions on First Amendment rights is on those who seek to impose the restrictions." Whether that same burden is applicable here is arguable given the association rather than speech interests implicated and given the Supreme Court's statement in *Jones* that "the burden was not on [prison official] appellants to show affirmatively" that the prisoners' First Amendment activity—a prisoners' union—"would be 'detrimental to proper penological objectives' or would constitute a 'present danger to security and order.'" 433 U.S. at 128, 97 S.Ct. at 2539. At the least, however, when a regulation restrictive of First Amendment rights is questioned, the state correctional officials must explain the purpose of the policy and present some indication of its necessity, as was done in *Jones*. See 433 U.S. at 126–127, 97 S.Ct. 2532. Otherwise the necessary deference to the decisions of prison administrators (*Id.* at 125, 97 S.Ct. 2532) can only be a blind allegiance inconsistent with the notion that "a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims." *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224.

■ Apparently because the trial focused on the denial of court access from the per-

spective of the inmates, the prison officials here did not seek to provide any necessity of a restriction on jailhouse lawyering. Of course, as other cases have established, it is possible to develop justifications for restricting at least certain types of inmate lawyering under certain circumstances. Thus writ writing for a profit has been prohibited (*e. g., McKinney v. DeBord*, 324 F.Supp. 928 (E.D.Cal.1970)), and an inmate has no right to be a writ writer during times when he is assigned to perform other work. See generally *Beathan v. Manson*, 369 F.Supp. 783 (D.Conn.1973). But here the policy as we have determined covered any jailhouse lawyering during all hours, making less applicable the justifications for less restrictive limitations on the activity.

 Although Buise may have First Amendment associational rights in writ writing (see *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417), defendants may be able to show on remand that the writing curb was validly imposed as an objective of prison administration.[9] See *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629. If writ writing was the predominant factor in Buise's transfer and its prohibition was justified, he is not entitled to damages (*Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471) even though the three other reasons for his transfer were constitutionally protected activities. Therefore on remand the district court should first redefine the bounds of the prison's writ writing curb in light of this opinion; then the parties should present evidence on the need for such a restriction.[10]

## B. *Law Library Requests*

An alternate reason given for plaintiff's transfer from the State Farm was his attempt to establish a law library there. Ironically, *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72, was decided about two months prior to the district court's decision and held that prison authorities must provide prisoners with adequate law libraries in the absence (as here) of adequate assistance from persons trained in the law. Thus Buise was requesting what has since been held to be his constitutional right.

 Even in cases in which what is requested is not something to which an inmate has a constitutional right, an inmate's request for improved conditions has been held constitutionally protected. See, *e. g., Sostre v. McGinnis*, 442 F.2d 178, 200 (2d Cir. 1971) (*en banc*), certiorari denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740; 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254; *Haymes v. Montayne*, 547 F.2d 188, 191 (2d Cir. 1976), certiorari denied, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063; *Carothers v. Follette*, 314 F.Supp. 1014 (S.D.N.Y.1970). In fact, since as *Bounds* indicates, Buise could have filed suit to vindicate this right, and during such a suit might have been asked whether he first sought relief from prison officials (cf. *Paden v. United States*, 430 F.2d 882 (5th Cir. 1970), affirmed in part, 402 U.S. 33, 91 S.Ct. 1289, 28 L.Ed.2d 577), making a library request to prison officials can hardly be penalized. There is no proof or even a claim that Buise's request was particularly vexing or disruptive. In this context, the request was constitutionally protected. For the reasons stated in Part IA above, a transfer based on such constitutionally protected speech is improper. Moreover, for the reasons stated in *Bounds*, the prison officials were wrong in not approving Buise's request for a prison library.

9. It is evident from *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718, that absent special circumstances or alternate means of court access, the mere fact that a jailhouse lawyer is not schooled in the law cannot in itself justify prohibiting his consulting with other inmates on legal matters. See *Cross v. Powers*, 328 F.Supp. 899, 904 n. 3 (W.D.Wis. 1971).

10. In particular, for instance, the court should determine whether the justifications for restrictions on writ writing suggested in Justice White's dissent in *Johnson v. Avery*, 393 U.S. 483, 499–500, 502, 89 S.Ct. 747, 21 L.Ed.2d 718, are applicable in the apparently non-violent atmosphere of the State Farm.

### C. Writ Department and Inmate Council Requests

 The remaining reasons for plaintiff's transfer, his requests to establish an inmate council and a writ department, are also protected activities for the reasons noted above even though the items requested may not be constitutional rights.[11] We need not decide whether it would have been protected to request establishment of an inmate council that would act like a union, because as we were advised without objection at the oral argument, the inmate council requested here was one that would oversee the operation of the writ room. Since these requests are protected activities, they were not a proper basis for transfer.

## II. RELIEF ON REMAND

 Because the transfer violated the rights of other inmates, plaintiff is entitled to declaratory and injunctive relief that his transfer was improper. Also, *Bounds* requires granting plaintiff's request that the State Farm be required to establish a law library unless a reasonable alternative means of access to the courts is developed.

Whether Buise is entitled to damages depends on whether he was transferred in retaliation for the exercise of his constitutional rights. Thus the district court first should determine with greater specificity why Buise was transferred. *Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471, outlines the standards for evaluating whether retaliation for protected conduct played a role sufficient enough in the decision to transfer to make that decision impermissible. It asks first whether the protected conduct was a substantial or motivating factor in the decision and then whether the same decision would have been reached in the absence of the protected conduct. See *Ayers v. Western Life Consolidated School District*, 555 F.2d 1309, 1314 (5th Cir. 1977).

 If the reason under the *Mount Healthy* standards for Buise's transfer was his requests for a law library, writ department and inmate council, damages should be awarded. If, on the other hand, these requests were not the reason for Buise's transfer, it follows that Buise was transferred for his writ-writing activity. Under this latter possibility, it will be necessary to evaluate the state's justification for prohibiting writ writing in order to determine whether Buise had a right to be a writ writer and therefore is entitled to damages.

 On the assumption that plaintiff was transferred in retaliation for the exercise of a constitutional right, in order to guide the district court on remand, we must consider two of defendants' objections to the allocation of damages. First, defendants assert that they are protected by good faith immunity. Under *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24, state prison officials are entitled to such immunity unless they "knew or reasonably should have known" that the action they took with respect to a prisoner would violate his federal constitutional rights. If the constitutionally violative action was punishment in response to requests for improved conditions of plaintiff's own confinement, then the good faith defense is clearly unavailable. As the cases cited in Part IB indicate, the right of prisoners to request improved conditions was as clear when these events took place in 1974 as it is now.

If plaintiff's transfer was in retaliation for his writ-writing activity, the law is not so clear. On the one hand, the right of other inmates to Buise's services, in the absence of an available alternative, was clear in 1974. See *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718; *Procunier v. Navarette*, 434 U.S. 568, 98 S.Ct. 855 (Stevens, J., dissenting); *Knell v. Bensinger*, 522 F.2d 720 (7th Cir. 1975).[12] On

11. We therefore need imply no position on whether a writ room is required under *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718.

12. Damages were not awarded in *Knell* because "the issue of whether a temporary denial [of access to the courts] could be effectuated for a fixed and limited duration in response to

the other hand, Buise's own First Amendment associational rights may not have been clearly established in 1974 before *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495, made certain that prisoners had those First Amendment rights not inconsistent with their status. See generally *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24.

Thus this case presents the question of whether conduct that clearly was violative of someone's rights can be immunized as having been taken in good faith if that conduct was not clearly violative of the rights of the person who later sues. While a literal application of the standard as stated in some Supreme Court cases (see, *e. g.*, *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24[13]) would mean that the prison officials' acts under such circumstances were in good faith, that standard is too narrow to apply here. Each of the Supreme Court cases whose language might imply this result has involved actions that clearly violated the rights of the inmate who sued, so that the question presented here was not raised. Almost by definition, a prison official who acts in violation of clearly established rights of all the inmates in his institution (possibly save one) can hardly be said to have acted in "good faith." The purposes of granting good faith immunity are not served by immunizing such conduct. Therefore, the state officials cannot escape damages by claiming immunity.

Finally, defendants contend, and the district court agreed, that plaintiff did not prove any damages. We disagree. Plaintiff testified regarding the less desirable circumstances at the State Prison. His room at the State Farm "would be almost like having an apartment in free society compared to what [he] had at the Prison," and meals at the Prison of course were also inferior. At the Farm, plaintiff could move about freely, and the atmosphere had considerably less tension. Admittedly, it is difficult to move from these comparisons to a compensatory dollar amount, but such difficulty cannot preclude an award of more than nominal damages. See *Mack v. Johnson*, 430 F.Supp. 1139, 1150–1151 (E.D.Pa. 1977). Other courts have translated a series of conditions into a realistic dollar figure, and the district court should do so on remand. See, *e. g.*, *United States ex rel. Larkins v. Oswald*, 510 F.2d 583 (2d Cir. 1975); *Wright v. McMann*, 321 F.Supp. 127 (N.D.N.Y.1970), affirmed in pertinent part, 460 F.2d 126 (2d Cir. 1972), certiorari denied, 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141; see generally *Little v. Walker*, 552 F.2d 193 (7th Cir. 1977).

In addition to a declaratory judgment, plaintiff may still wish to secure reinstatement as librarian at the State Farm unless his motion to withdraw his request for a preliminary injunction, granted in September 1975 (see R. 97–99), was intended to apply to a permanent injunction as well. If so, his request for establishment of a law library at the State Farm would also be moot. See *Kerrigan v. Boucher*, 450 F.2d 487, 488–489 (2d Cir. 1971). If on remand the district court holds that petitioner's transfer was mainly for writ writing and that the prohibition on his writ writing was warranted, he should receive no damages.

Reversed and remanded for further proceedings consistent herewith.

McMILLEN, District Judge, concurring.

In view of footnote 1, *supra*, I concur with the foregoing decision, except that I would not remand for the determination of damages arising from plaintiff's transfer to the State Prison. He is, however, entitled to provable damages on his own behalf for

violations of prison regulations in the interests of institutional safety and security was not foreclosed" by prior judicial precedents. 522 F.2d at 727.

13. For example, in *Navarette* the Court stated the standard by quoting from *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214, to the effect that "he will not be shielded from liability if he acts 'with such disregard of the [plaintiffs] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith." 434 U.S. at 562, 98 S.Ct. at 860.

**234**

interference with his constitutional rights as an advocate for certain innovations at the State Farm.

Plaintiff seeks damages for his inferior living conditions at the State Prison, despite the fact that he lost no good time and was not otherwise punished. Plaintiff had no constitutional right to remain at the State Farm. Although defendants have the right to reassign him to the prison at any time without any reason or hearing, they are nevertheless now being subjected to the possibility of paying damages for doing what they had a right to do. Declaratory or injunctive relief should fully resolve plaintiff's grievance. To award him damages for living under less desirable conditions than he enjoyed at the Farm is an unmerited windfall and an unwise departure from precedent.