837 F.2d 475
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William Lynn JOHNSON, Plaintiff-Appellee, Cross-Appellant,
v.
William COOP; Captain George Carter; Captain T. Lomax;
Max Aycock; Chaplain L. Mullens; and Sergeant
Sears, Defendants-Appellants, Cross-Appellees.
 Nos. 85-5845, 86-5244.
 United States Court of Appeals, Sixth Circuit.
 Jan. 19, 1988.
 
 Before BOYCE F. MARTIN, Jr., and DAVID A. NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is prisoner civil rights case in which, after a trial to a jury, the plaintiff recovered a judgment against certain prison officials for substantial damages. The defendant officials have appealed, contending, among other things, that the plaintiff failed to make a prima facie showing that any of his constitutional rights was violated. The plaintiff has cross-appealed on various grounds, the most significant of which is a claim that the trial court erred in failing to give a jury charge on punitive damages. Finding that the plaintiff failed to preserve his right to complain of any error in the instructions to the jury, and seeing no basis for reversing on any of the other assignments of error, we shall affirm the judgment.
 
 
 2
 * On February 3, 1981, officials of the Shelby County jail in Memphis, Tennessee, conducted a search of the cells. While doing so they destroyed, damaged, or removed personal belongings of inmates assigned to a cellblock that was populated by "jailhouse lawyers," of whom plaintiff William Lynn Johnson was one. (Mr. Johnson had some important papers belonging to an inmate on whose case he was working, and these papers, along with confidential files on other prisoners and some of Mr. Johnson's personal legal papers, were among the property destroyed.) The inmates threatened reprisal. Later in the day a fire broke out in the cellblock in question.
 
 
 3
 After the fire the guards returned the prisoners to their cells, stripped them of their clothes, and removed their bedding and furniture. There was water standing "inches-deep" in the cells. Defendant George Carter ordered that the windows be left open over-night, notwithstanding that no smoke remained from the fire. The outside temperature was below freezing.
 
 
 4
 The day after the fire plaintiff Johnson and 17 other inmates were given notice of disciplinary charges involving arson and destruction of property. On February 5, 1981, they appeared before a disciplinary committee comprised of defendants Aycock, Sears, Mullens, Coop and Carter. The prisoners were not permitted to respond to the charges or offer any defense, and after fifteen minutes they were found guilty and sentenced to "deadlock."
 
 
 5
 On February 10, 1981, plaintiff Johnson mailed a complaint to the United States District Court for the Eastern District of Tennessee. On February 13 the court issued a temporary restraining order haulting the deadlock. Mr. Johnson was released from the deadlock on February 16, but on the 18th he was charged with various offenses under the prison rules, including refusal to aid an officer, starting a riot, and being an accessory before and after the fact of arson. Johnson appeared before the disciplinary committee on February 20. Again, he was not permitted to defend against the charges. He was found guilty and sentenced to "time served."
 
 
 6
 In the district court proceedings Mr. Johnson charged violations of four constitutional rights: a right to be free from deliberate indifference to a potential danger from arson; a right of access to the courts; a right not to be deprived of his liberty without due process; and a right to be free from cruel and unusual punishment. The case was tried to a jury in August of 1985. During the trial, the district court dismissed Johnson's claim of denial of access to the courts and granted a directed verdict in his favor on the issue whether the process accorded him in the disciplinary proceedings fell short of that which was due under the Constitution.
 
 
 7
 The jury found no liability for failure to prevent the arson. It found that defendant Carter had subjected plaintiff to cruel and unusual punishment, and damages of $5,000 were awarded against Carter on this claim. Damages of $6,600 were awarded against the members of the disciplinary committee on the due process claim.
 
 
 8
 Plaintiff Johnson contends on appeal that the district court erred in not instructing the jury on punitive damages, in dismissing his claim on the right of access to the courts, in allowing cross-examination of his witnesses on their prior felony convictions, and in permitting improper closing arguments regarding these convictions and other matters.
 
 
 9
 The defendant officials contend that plaintiff Johnson failed to make out a case for the jury on any constitutional violation for which damages could be awarded. They suggest that Johnson's claims sounded in negligence only, and that because Tennessee law provided an adequate remedy therefor, no action for violation of the United States Constitution could lie under 42 U.S.C. Sec. 1983. They also contend that the jury's verdict was inconsistent and contrary to the evidence.
 
 II
 
 10
 At the close of the evidence the trial court informed plaintiff Johnson, who tried his case pro se, that it would not charge on punitive damages and that he could lodge exceptions to the jury instructions. Johnson inquired whether he was permitted to argue for the damages that he requested in his complaint, which included punitive damages. He was told that he could, and he did so. After charging the jury, the court asked plaintiff Johnson whether he had any exceptions to the instructions given. He replied that he did not.
 
 
 11
 Fed.R.Civ.P. 51 says that no party may assign as error the failure to give an instruction unless he objects thereto before the jury retires. Plaintiff Johnson was afforded an opportunity to object, and he didn't. We will excuse such a failure to object only where the instructions contained an obvious and prejudicial error that must be corrected in the "interests of justice." Batesole v. Stratford, 505 F.2d 804, 808 (6th Cir.1974).
 
 
 12
 In the case before us the plaintiff has been fully compensated for the violation of his rights. He has already been made whole; if the jury's award does not contain an element of punitive damages--and it may very well contain such an element--there can be no doubt that it is fully compensatory as far as plaintiff's actual damages are concerned. Punitive damages may be viewed as "private fines" representing "quasi-criminal punishment," not compensation. Womack v. Gettelfinger, 808 F.2d 446, 451-52 (6th Cir.1986). The interest of justice requires that the plaintiff be paid for what he has lost, but that interest has been fully served; and if the defendants have not already been subjected to punishment in the jury's very generous award of damages, we do not believe that this is a case in which society's interest in seeing the defendants punished is so great that another jury ought to be empaneled to consider an additional award.
 
 
 13
 As to plaintiff's claim of a denial of access to the courts, the testimony showed that telephone calls to outside attorneys were permitted while Mr. Johnson was in deadlock, and there was no showing that the destruction of his personal property (for which a separate action was brought in state court) had any effect whatever on the course of any legal proceeding in which he himself may have been a party or prospective party, as opposed to legal proceedings in which he was acting for other prisoners. Injunctive relief might have been a possibility, see Buise v. Hudkins, 584 F.2d 223, 227 (7th Cir.1978), cert. denied, 440 U.S. 916 (1979), but the destruction of the plaintiff's legal materials was an isolated incident, not likely to be repeated.
 
 
 14
 As to the allegedly improper cross-examination and closing argument, counsel for the plaintiff told us at oral argument that the plaintiff is satisfied with the award of compensatory damages and does not seek a new trial. Unless we give the plaintiff a reversal he does not want, anything we might say about the cross-examination and closing argument would be dicta only. No useful purpose would be served by discussing these matters.
 
 III
 
 15
 The defendants' arguments are equalling unavailing. The plaintiff clearly had a meritorious case for violations of his constitutional rights. Notice and an opportunity to be heard are the fundamentals of due process, and prisoners are entitled to such process before being put in deadlock. Wolf v. McDonnell, 418 U.S. 539, 41 L.Ed.2d 935, 956 (1974). Here there was a complete denial of a right to be heard before the disciplinary committee imposed punishment.
 
 
 16
 A violation of the Eighth Amendment prohibition against cruel and unusual punishment--a prohibition made applicable to the states by the Fourteenth Amendment--is actionable under 42 U.S.C. Sec. 1983 regardless of the adequacy of state remedies. The question whether it was cruel and unusual punishment for the prisoners to be exposed to the elements overnight was properly submitted to the jury. Cf. Smith v. Sullivan, 553 F.2d 373, 381 (5th Cir.1977) ("If the proof shows the occurrence of extremes of temperature that are likely to be injurious to inmates' health relief should be granted....") The contention that the plaintiff's claims sounded only in negligence, like the contention that the jury's verdict was somehow "inconsistent" and contrary to the evidence is patently frivolous.
 
 
 17
 The judgment is AFFIRMED.
 
 
 18
 CONTIE, Senior Circuit Judge, dissenting.
 
 
 19
 I agree with the majority that defendants' claims and plaintiff's right of access to the courts claim are meritless, and that in light of the fact that plaintiff does not seek a new trial, no useful purpose would be served by addressing plaintiff's improper cross-examination and closing argument claims. However, because I believe that the district court's failure to instruct on punitive damages was obvious and prejudicial and that the interests of justice require the impanelling of a jury to consider punitive damages, I dissent.
 
 
 20
 In Burkhart v. Randles, 764 F.2d 1196 (6th Cir.1985), this court noted that,
 
 
 21
 [t]he Supreme Court has held that a jury determining a Section 1983 action should receive instructions on whether and how to assess punitive damages 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' ... Further, the Court has noted that evidence of sufficiently serious misconduct 'that calls for deterrance and punishment ... above that provided by compensatory awards' triggers the jury's direction to consider awarding punitive damages."
 
 
 22
 Id. at 1202 (quoting Smith v. Wade, 461 U.S. 30, 52, 56 (1983)) (citations omitted) (emphasis added).
 
 
 23
 Based on the alleged conduct of the defendants in the instant case, the pro se plaintiff was obviously entitled to an instruction on punitive damages. Also, the fact that the jury compensated the plaintiff for two of his claims leads to the conclusion that a properly instructed jury may have awarded punitive damages on either or both of these claims; therefore, the failure to instruct the jury on punitive damages was prejudicial to the plaintiff.
 
 
 24
 The fact that this pro se plaintiff was permitted to argue for punitive damages does not ameliorate the harm caused by the district court's failure to instruct the jury on the standards for awarding punitive damages. Since the jury was not so instructed, and since their award was for compensatory damages only, one can conclude that the jury did not consider the issue of punitive damages. I believe that the district court's failure to instruct on punitive damages was obvious and prejudicial, and that under the facts of this case the interests of justice require that the case be remanded to the district court for a determination of the sole issue of punitive damages.